James N. **HERSHEY**, Plaintiff,

v.

**PRAXAIR, INC., d/b/a Ucisco, Inc., Defendant.**

**Civil Action No. G–96–373.**

United States District Court, S.D. Texas, Galveston Division.

July 11, 1997.

David P. Salyer, McLeod Alexander Powell & Apffel, Galveston, TX, for Plaintiff.

Kevin M. Sadler, Baker & Botts, Austin, TX, for Defendants.

### ORDER DENYING MOTION FOR SUMMARY JUDGMENT

KENT, District Judge.

Plaintiff filed this action pursuant to the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq. Now before the Court is Defendant's Motion for Summary Judgment of March 7, 1997. For the reasons set forth below, Defendant's Motion for Summary Judgment is **DENIED.**

In 1991, Plaintiff James N. Hershey began working for Defendant [1] in its La Porte, Texas facility as a Technician I. Plaintiff subsequently received a promotion to a Technician III. According to Defendant's job description of the position, a Technician III must be capable of planning jobs, scheduling technicians, arranging for the delivery of fuel and liquid nitrogen, and be responsible for all field necessitated repairs. This job also apparently requires the technician to drive an eighteen–wheeler truck to deliver the liquid nitrogen. The qualifications for the Technician III position are:

(1) work flexible shifts and adapt readily to new work environments;

(2) have a strong mechanical aptitude;

(3) regularly work unsupervised;

(4) have the ability to do heavy lifting of fifty pounds and climb ladders;

(5) maintain respirator qualifications and medical certification;

(6) qualify to operate a commercial motor vehicle under Federal Motor Carrier Regulations section 391;

(7) one year UCISCO service as a Technician II with minimum evaluation of meets expectations or equivalent verifiable experience in this field;

(8) comply with the Federal Motor Carrier Safety Regulations;

(9) complete trip reports;

(10) meet all UCISCO/Praxair policies concerning training, accident reporting, emergency response, accident investigation, and hazardous material transportation;

(11) perform new employee driver road testing certification.

In 1993, Plaintiff began experiencing neurological problems in his lower extremities and allegedly notified his employer of these problems. Plaintiff was subsequently diagnosed as having Iliopsoas Bursitis, Meralgia Paresthetica, and Sacroiliac Joint Dysfunction. These conditions caused Plaintiff severe and sharp pain in his legs and hip. For several months beginning in October, 1994, Plaintiff visited several doctors, all of whom placed restrictions on the kind of work he could perform. Plaintiff was restricted to "office duty" and was prohibited from lifting, driving, or excessive standing. As a result of these restrictions, Plaintiff could not perform some parts of the job of a Technician III. Defendant's plant manager and Plaintiff's supervisor assigned Plaintiff to various light duty tasks, including dispatching, training, and various office work. Plaintiff's supervisor claims that at the time of this assignment, he informed Plaintiff that the assignment to light duty was temporary and that the plant did not have any permanent, light duty positions.[2] In December, 1994, the position of Maintenance Coordinator/Supervisor became open. Plaintiff claims that he inquired about obtaining this position because it was an office job that involved no heavy lifting or climbing. Defendant allegedly told him that the position was not going to be filled. In January, 1995, Plaintiff was placed on disability leave. According to Plaintiff, a few weeks after he left, Defendant hired someone else for the Maintenance Coordinator/Supervisor position.

After taking disability leave, Plaintiff applied for and received salary continuation benefit, under Defendant's Longterm Disability Plan. This plan was designed to provide Defendant's employees with a continuing income supplement in the event that they leave work due to illness or injury. It rounds out existing programs that provide short–term coverage and also provides coverage for permanent and total disabilities. The plan provides an income supplement of a certain percentage of an employee's pay if the employee is totally disabled and unable to work. Under this plan, Plaintiff received a net of $1,190.00 a month until October, 1996, when the benefits were increased to a net of $1,250.00.

On June 20, 1995, Plaintiff underwent surgery on his hip. In July, 1995, Defendant

---

**1.** Defendant's business consists of providing nitrogen pumping services to industrial customers.

**2.** It appears that these administrative tasks were normally performed by supervisors along with their other duties and by a maintenance coordinator. Plaintiff simply took over some of their duties during this time.

discharged Plaintiff from its employ. Subsequent to his surgery and his discharge, Plaintiff applied for Social Security disability benefits, but these benefits were denied because Plaintiff was not disabled under the Social Security Administration rules. The Social Security Administration determined that Plaintiff's condition would not be disabling for twelve continuous months and totally prevent him from working.

In a post–surgery evaluation on August 2, 1995, Plaintiff's physician, Dr. James Butler, stated that Plaintiff had a Class 4 physical impairment, meaning that Plaintiff had moderate limitation of functional capacity and was capable of clerical/administrative, sedentary activity. Dr. Butler completely prohibited Plaintiff from driving, climbing, operating heavy equipment, and lifting any weight, among other restrictions. Dr. Butler did state that Plaintiff was able to perform supervisory, dispatch and office work. In a functional capacity evaluation over a year later on October 9, 1996, Dr. Butler stated that Plaintiff should completely avoid climbing, balancing, operating a truck/dolly/small vehicle, and operating heavy equipment. Dr. Butler relaxed his restrictions as to Plaintiff's lifting abilities, finding that Plaintiff could lift up to thirty pounds for sixty percent or more of his workday and over forty–five pounds for less than twenty percent. Dr. Butler concluded that Plaintiff was not totally disabled and could perform sedentary work.

As a result of his termination, Plaintiff filed suit against Defendant under the ADA, claiming that Defendant discriminated on the basis of a disability when it discharged him. Defendant seeks summary judgment on Plaintiff's claim, arguing that Plaintiff, with his medical restrictions, was not qualified for the Technician III position. Defendant further argues that Plaintiff should be estopped from now claiming that he was qualified and able to perform the duties of a Technician III on the grounds that he previously claimed he was disabled and unable to work in his application for longterm disability benefits and Social Security benefits.

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). Issues of material fact are genuine only if they require resolution by a trier of fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). In other words, the Court must accept the evidence of the nonmoving party and draw all justifiable inferences in favor of that party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). Determining credibility, weighing evidence, and drawing reasonable inferences are left to the trier of fact. *Anderson*, 477 U.S. at 255, 106 S.Ct. at 2513.

The party moving for summary judgment bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317. 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *see also* Fed.R.Civ.P. 56(c). The burden then shifts to the nonmoving party to establish the existence of a genuine issue for trial. *Matsushita*, 475 U.S. at 585–87, 106 S.Ct. at 1355–56; *Wise v. E.I. DuPont de Nemours & Co.*, 58 F.3d 193, 195 (5th Cir.1995). To meet this burden, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts" by "com[ing] forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita*, 475 U.S. at 586–87, 106 S.Ct. at 1355–56 (quoting Fed.R.Civ.P. 56(e)). Summary judgment should be granted only if the evidence indicates that a reasonable fact-finder could not find in favor of the nonmoving party. *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510; *see also Matsushita*, 475 U.S. at 587, 106 S.Ct. at 1356.

To prevail on a discrimination claim under the ADA, a plaintiff must prove 1) that he has a "disability"; 2) that he is "qualified" for the job; and 3) that an adverse employment decision was made solely because of his disability. *Turco v. Hoechst Celanese Chemical Group, Inc.*, 101 F.3d 1090, 1092 (5th Cir. 1996) (citing *Rizzo v. Children's World Learning Centers, Inc.*, 84 F.3d 758, 763 (5th

Cir.1996)). The regulations enacted pursuant to the ADA define "disability" as a "physical or mental impairment that substantially limits one or more of the major life activities of such individual," a "record of such an impairment" or "[b]eing regarded as having such an impairment." 29 C.F.R. § 1630.2(g) (1996). "Major life activities" are defined as "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." *Id.* § 1630.2(i). "Substantially limits" is defined as "unable to perform a major life activity that the average person in the general population can perform" or "significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which an average person in the general population can perform the same major life activity." *Id.* § 1630.2(j). A person is regarded as having a disability if he or she "[h]as a physical or mental impairment that does not substantially limit major life activities but is treated by a covered entity as constituting such limitation," "[h]as a physical or mental impairment that substantially limits major life activities only as a result of the attitudes of others towards such impairment," or "[h]as none of the impairments defined in [29 C.F.R. § 1630.2(h) ] but is treated by a covered entity as having a substantially limiting impairment." *Id.* § 1630.2(*l* ).

In this case, the Court finds that a fact question exists regarding whether Plaintiff had a disability as the ADA defines it at the time he was discharged. Plaintiff's medical records indicate that he had some restrictions and limitations in walking, sitting, standing, lifting, reaching, pulling and other activities. The regulations implementing the ADA list walking as a major life activity, and the Fifth Circuit has held that lifting, reaching, sitting and standing may constitute major life activities. *Ray v. Glidden Co.,* 85 F.3d 227, 229 (5th Cir.1996) (citing *Dutcher v. Ingalls Shipbuilding,* 53 F.3d 723, 726 n. 7 (5th Cir.1995)). It cannot be ascertained from the medical records whether the limitations on these activities were severe enough to qualify Plaintiff as being unable to perform major life activities or significantly restricted in the performance of major life activities compared to the average person in society. These facts must be adduced at trial. Defendant contends that Plaintiff does not have a disability under the ADA because he now leads an apparently normal life and drives, walks, sits in class, and takes his kids to Astroworld. The Court finds, however, that the status of Plaintiff's physical impairment must be viewed at the time of his discharge, when the allegedly discriminatory act took place. Plaintiff's present physical condition and capabilities are of course relevant in determining whether Plaintiff had a disability when he was discharged because it may help demonstrate that the nature, severity, and duration of Plaintiff's impairment were not significant enough to qualify it as a disability. *See* 29 C.F.R. § 1630.2(j)(2) (stating that the nature, severity, duration, and permanent or long–term impact of an impairment should be considered in determining whether a person is substantially limited in a major life activity). The Court also finds that a fact question exists as to whether Plaintiff was regarded by Defendant has having a disability. Because the Court finds that genuine issues of material fact exist regarding whether Plaintiff has a disability under the ADA, it cannot grant summary judgment in favor of Defendant on the grounds that Plaintiff does not have a disability.

Even if an individual has a disability, he must also demonstrate that he was qualified for the job he held or desired in order to prevail on an ADA claim. A person with a disability is "qualified" for a job if that person "satisfies the requisite skill, experience, education and other job—related requirements of the employment position such individual holds or desires" and "with or without reasonable accommodation, can perform the essential functions of such position." *Id.* § 1630.2(m). In determining whether a plaintiff is a "qualified individual" with a disability, the Court must first determine whether the plaintiff can perform the essential functions of the job he holds. *Chandler v. City of Dallas,* 2 F.3d 1385, 1393 (5th Cir.1993), *cert. denied,* 511 U.S. 1011, 114

S.Ct. 1386, 128 L.Ed.2d 61 (1994); *see also* *Daugherty v. City of El Paso*, 56 F.3d 695, 696 (5th Cir.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 1263, 134 L.Ed.2d 211 (1996). If the Court concludes that the plaintiff is unable to perform the essential functions of the job, the Court must then determine whether any reasonable accommodation by the employer would enable the plaintiff to perform those functions. *Chandler,* 2 F.3d at 1394–94.

■ "Essential functions" are those functions that bear more than a marginal relationship to the job at issue. *Chandler,* 2 F.3d at 1393. Physical criteria, such as the ability to lift heavy loads, must be necessary and substantially related to a person's ability to perform the essential functions of the job. Evidence of whether a particular function is essential includes, but is not limited to: (1) the employer's judgment as to which functions are essential; (2) written job descriptions prepared before advertising or interviewing applicants for the job; (3) the amount of time spent on the job performing the function; (4) the consequences of not requiring the incumbent to perform the function; (5) the terms of a collective bargaining agreement; (6) the work experience or past incumbents on the job; and/or (7) the current work experience of incumbents in similar jobs. 29 C.F.R. § 1630.2(n)(3).

Defendant contends that Plaintiff was not qualified for the Technician III position because he could not perform the essential functions of the job with or without reasonable accommodation. The Court first analyzes whether Plaintiff could perform the essential functions of the Technician III position without reasonable accommodation. According to Defendant's job description of the Technician III position, in order to be qualified for the job, a person must be able to do heavy lifting, climb ladders, do field repairs, qualify to operate and operate a commercial vehicle. The Court finds that this written job description and various affidavits regarding the requirements of the position amply demonstrate that heavy lifting, climbing, and driving a commercial vehicle are essential functions of the Technician III position. As indicated above, after Plaintiff was diagnosed with his ailments, Plaintiff's physician placed a total restriction on Plaintiff's ability to drive and placed other stringent restrictions on his ability to stand, climb, and lift heavy items. The Court finds that with these medical restrictions, Plaintiff was unable to perform the above–listed essential functions of the Technician III job without reasonable accommodation.

■ The Court now turns to the question of whether any reasonable accommodation by Defendant would enable Plaintiff to perform those essential functions. Reasonable accommodation may include, but is not limited to making existing facilities used by employees readily accessible to and usable by individuals with disabilities; job restructuring; part–time or modified work schedules; reassignment to a vacant position; acquisition or modifications of equipment or devices; appropriate adjustments or modification of examinations, training materials or polices; or the provision of readers or interpreters. *Id.* § 1630.2(o)(2)(i)–(ii). The ADA does not require an employer to eliminate or reallocate essential functions of a position in order to provide accommodation. *Bradley v. University of Tex. M.D. Anderson Cancer Center,* 3 F.3d 922, 925 (5th Cir.1993), *cert. denied,* 510 U.S. 1119, 114 S.Ct. 1071, 127 L.Ed.2d 389 (1994); *see also* 29 C.F.R. § 1630.2(o). "Such redefinition exceeds reasonable accommodation." *Bradley,* 3 F.3d at 925.

■ Plaintiff suggests a number of steps Defendant could have taken to reasonably accommodate him. Plaintiff first suggests that Defendant could have placed a device in the commercial vehicles he was required to drive that would bring the accelerator and brake pedals closer together and to even heights so that Plaintiff could drive them. Plaintiff, however, offers no evidence that such a device exists, that he requested that Defendant place such a device in the trucks, or whether this device would even alleviate Plaintiff's pain and difficulty in driving the trucks. Moreover, there is no medical evidence from any physician that Plaintiff could have driven the trucks if this device were installed. Finally, this device would not in any way assist Plaintiff in performing other essential functions of the job. For

these reasons, the Court finds that this accommodation was not reasonable. Second, Plaintiff suggests that Defendant could have assigned a Technician Helper to assist Plaintiff in any climbing or heavy lifting that might be required in his job. A Technician Helper's responsibility is to be on call to assist Technicians in their jobs, and Plaintiff suggests that he could do any ground level, non–lifting work and have a Helper do the climbing and heavy lifting. The Court finds that it is not a reasonable accommodation to assign a Technician Helper to assist Plaintiff in the performance of the essential functions of his job. While the Helpers may exist to assist Technicians, they exist to assist all Technicians and cannot reasonably be assigned to one Technician. It is not reasonable to require an employer to have two people doing one person's job in the name of accommodation. Assistance is one thing, but performing a significant portion of the essential functions of another person's job is another thing altogether.

Finally, Plaintiff suggests that Defendant could have reassigned him to a light duty clerical position similar to the one he performed for several months after he was initially diagnosed. For the accommodation of a reassignment to be reasonable, however, a position must first exist and be vacant. *Foreman v. Babcock & Wilcox Co.*, 113 F.3d 1402, 1412 (5th Cir.1997). Plaintiff presents no evidence of the existence of a general, light duty clerical position involving tasks similar to the ones he earlier performed. Nor is Defendant obligated to create light duty positions to accommodate disabled employees. *Turco*, 101 F.3d at 1094 (citation omitted). Therefore, the Court finds that reassignment to some theoretical light duty clerical position is not a reasonable accommodation. The Court notes, however, that Plaintiff can point to one specific job, that of Maintenance Coordinator/Supervisor, that existed and was allegedly vacant during the time Plaintiff was seeking accommodation. Plaintiff alleges that he inquired about getting this position and was told that the position would not be filled. He alleges that Defendant did in fact fill the position after he took disability leave. Defendant maintains that reassignment to this position would have been a promotion and that it is not obligated to promote to accommodate. Defendant's position may well be accurate, but the Court notes that Plaintiff was not denied the position on the grounds that he was not qualified or ripe for a promotion. He was told that the position would not be filled. In order to resolve this dispute, the Court would need additional facts, such as whether Plaintiff actually applied for the position and was denied, on what grounds he was denied, and who later filled the position. These facts will need to be fleshed out at trial to enable the finder of fact to accurately determine whether Defendant failed to reasonably accommodate Plaintiff by not reassigning him to the Maintenance Coordinator/Supervisor position. Thus, the Court finds that fact issues exist regarding whether reassignment to the Maintenance Coordinator/Supervisor position was a reasonable accommodation that Defendant could have made for Plaintiff and whether Defendant is liable for unlawful discrimination by failing to reasonably accommodate Plaintiff by reassigning him to this position. The existence of these fact issues along with the ones regarding whether Plaintiff has a disability preclude the Court from granting Defendant's Motion for Summary Judgment.

Therefore, for the reasons set forth above, Defendant's Motion for Summary Judgment is **DENIED**. The parties are **ORDERED** to bear their own taxable costs and expenses incurred herein to date. The parties are instructed to file nothing further on these issues in this Court, including motions to reconsider and the like, unless compelling evidence warrants such a reconsideration. Instead, the parties are instructed to seek any further relief to which they feel themselves entitled in the United States Court of Appeals for the Fifth Circuit, as may be appropriate in due course.

**IT IS SO ORDERED.**