**Stephen NEWMAN**

v.

**CHEVRON U.S.A.**

**Civil Action No. G–96–621.**

United States District Court,
S.D. Texas,
Galveston Division.

Oct. 7, 1997.

---

**7.** This is solely an upper limit; in no event will Defendant be liable for more than Plaintiff's ac-tual damages.

Gregg M. Rosenberg, Gregg M. Rosenberg & Associates, Houston, TX, for plaintiff.

Holly Harvel Williamson, Littler, Mendelson et al, Houston, TX, for defendant.

### ORDER GRANTING SUMMARY JUDGMENT

KENT, District Judge.

Plaintiff brings this suit under the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq., against Defendant Chevron U.S.A. Plaintiff has been diagnosed with Post Traumatic Stress Disorder and alleges that this employment with Defendant was terminated because of his condition. Now before the Court is Defendant's Motion for Summary Judgment of September 5, 1997. For the reasons set forth below, the Motion is **GRANTED** and Plaintiff's claims are **DISMISSED WITH PREJUDICE.**

### I. FACTUAL SUMMARY

The determination of summary judgment in this case requires a close review of the facts giving rise to Plaintiff's Complaint. Mr. Newman, the Plaintiff in this case, began his employment with Chevron in November of 1994. Prior to his termination, Mr. Newman worked as a gas delivery driver, requiring him to operate an eighteen-wheeled tractor trailer delivering highly flammable gasoline to retail stations. In February of 1995, and again in July of 1995, Mr. Newman was disciplined by Chevron for what is in the

industry commonly called "mixing." A mix occurs when a driver mistakenly puts gasoline of one octane level into an underground holding tank at the retail station meant for another octane level. If the holding tank was meant for a higher level of octane, the entire tank may have to be drained and replaced with the higher grade gasoline. If higher octane gas is placed in a tank meant for a lower octane, no drainage is needed; however, Chevron loses the potential profit gained from selling the higher grade gasoline.[1] Mr. Newman admitted and reported the first mix; however, he did not report the second mix, claiming no memory of it. At that time, because of his lapse of memory, Chevron's Terminal Manager suggested to Mr. Newman that he seek counseling with Dr. Virginia Young through Chevron's Employee Assistance Program. He did not do so. In his Complaint, Mr. Newman admits responsibility for the mixes and alleges that the mixes were a direct result of his eventual diagnosis of Post Traumatic Stress Disorder ("PTSD").

Mr. Newman continued to drive for Chevron. One or two months after being disciplined for the mixes, Mr. Newman had a "lapse in concentration" while driving his tractor trailer and "woke up" going down the interstate highway without knowing where he was and without any idea what events had occurred during the lost time. Following this lapse of concentration while driving, Mr. Newman sought help from Dr. Young, to whom he had previously been referred by Chevron. At that time, he was diagnosed with "trauma" resulting from a boating accident where he and his friend had been scuba diving and his friend had drowned. As a result of the boating accident, the drowning victim's family had filed suit against Mr. Newman, allegedly worsening his mental state and affecting his job performance as the lawsuit progressed. Dr. Young referred Mr. Newman to Dr. Michael Mize for further treatment and diagnosis.

After his initial diagnosis with trauma by Dr. Young, Mr. Newman continued to drive for Chevron. At approximately midnight on January 23, 1996, while leaving a retail sta-tion following a delivery, Mr. Newman accidentally backed his truck into a sign, causing slight damage to the trailer and the sign. Upon returning to the terminal, Mr. Newman inspected his truck and completed a post-trip report. Mr. Newman concedes that he did not report the damage to his truck on the company provided form. He further admits that Chevron policy requires such reporting, subject to dismissal. Later, Mr. Newman's relief driver discovered the damage to the truck and reported it to Mr. Crawford, a Chevron supervisor. Mr. Newman contends that he has no memory of the accident involving the truck. He asserts that when inspecting the truck following his deliveries, he did not see the damage because the lighting at the terminal was inadequate. Mr. Newman also contends that after being informed of the damage by his relief driver, he attempted to report the accident to Mr. Crawford but was unable to do so because Mr. Crawford was not in his office.

After learning of the damage to the truck, Mr. Crawford investigated the accident, finding the damage to the truck and the damaged sign at the retail station. Thereafter, Mr. Crawford met with Mr. Newman to discuss the accident. Although he claimed no memory of it, Mr. Newman accepted full responsibility for the accident. Mr. Newman at that time informed Mr. Crawford of his diagnosis with PTSD and described his difficulty in concentrating and recalling. The two men then discussed what actions should be taken. After declaring that it was quite possible that he could kill people with his truck without noticing it and admitting that if he drove his truck there was a possibility for extreme danger, Mr. Newman was subsequently taken off of his delivery schedule and given temporary medical leave.

While Mr. Newman was on medical leave, Chevron convened a routine *Motor Vehicle Accident Peer Review Committee* composed of four truck drivers to review the accident at the retail station. After reviewing the evidence gathered and talking to several witnesses, the Committee concluded that Mr.

---

1. During this same time period Plaintiff again "mixed" the gasoline a third time but was not disciplined for it. Not surprisingly, Defendant describes its decision not to discipline Plaintiff as an "act of compassion," while Plaintiff calls it a "cover up."

Newman's accident was preventable. Thereafter, two of the members of the Committee informed Chevron management of their belief that Mr. Newman in fact remembered the accident, but was only covering it up to avoid termination. The basis for this belief were statements made by Diane Jenkins, an employee of an independent contractor working at the terminal. Previously, Ms. Jenkins had informed Committee members that she had heard Mr. Newman talk about the accident upon returning to the terminal on the night in question. Ms. Jenkins later confirmed her statements made to certain Committee members by stating in writing that Mr. Newman had told her on the night of the accident that he was indeed responsible, but that he did not intend to report the accident. This statement was later confirmed in person by Chevron supervisory personnel.

On February 22, 1996, believing his PTSD to be "under control," Mr. Newman's therapist released him to· return to work. Upon his return, he met with Mr. Crawford and other Chevron supervisory personnel and was again confronted about his knowledge of the accident. Again Mr. Newman conceded that he must have been responsible for the accident, but denied any memory of it and any intent to purposely fail to report it. The Chevron Driver Uniform Discipline Code assesses points against its drivers based upon the nature of the violation committed. Drivers with over one year of experience, like Mr. Newman, are subject to termination after accumulation of five points. Previously, Mr. Newman had been assessed two points total for the two mixes. The Discipline Code also provides for immediate termination for "failure to report an accident, spill, or mix." On February 27, 1996, pursuant to the Discipline Code, Mr. Newman was terminated.

Plaintiff brings this action alleging violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq. Specifically Plaintiff claims that he is disabled as that term is defined under the ADA and that he was terminated because of his disability. Defendant asserts that Plaintiff was terminated for poor performance and for violating company policy by failing to report the accident.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). When a motion for summary judgment is made, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Issues of material fact are "genuine" only if they require resolution by a trier of fact. Id at 248, 106 S.Ct. at 2510. The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. Only disputes over facts that might affect the outcome of the lawsuit under governing law will preclude the entry of summary judgment. Id. at 247–48, 106 S.Ct. at 2510. If the evidence is such that a reasonable fact-finder could find in favor of the nonmoving party, summary judgment should not be granted. Id.; see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); Dixon v. State Farm Fire & Casualty Co., 799 F.Supp. 691 (S.D.Tex.1992) (noting that summary judgment is inappropriate if the evidence could lead to different factual findings and conclusions). Determining credibility, weighing evidence, and drawing reasonable inferences are left to the trier of fact. Anderson, 477 U.S. at 255, 106 S.Ct. at 2513.

## III. ADA FRAMEWORK

The ADA prohibits discrimination against "a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a); see also Daugherty v. City of El Paso, 56 F.3d 695, 696 (5th Cir.1995), cert. denied, — U.S. ——, 116 S.Ct. 1263, 134 L.Ed.2d 211 (1996);

*Dutcher v. Ingalls Shipbuilding,* 53 F.3d 723, 725 (5th Cir.1995). The term "qualified individual with a disability" means an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires. *See* 42 U.S.C. § 12111(8). The Fifth Circuit applies the burden shifting analytical framework first established in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), to analyze claims under the ADA. *See Daigle v. Liberty Life Ins.,* 70 F.3d 394, 396 (5th Cir.1995).²

Under the familiar *McDonnell Douglas/Burdine* framework, the Court employs a three-part test designed to determine the motivation of the defendant in taking the challenged action. *See McDonnell Douglas,* 411 U.S. at 803–04, 93 S.Ct. at 1824–25; *Burdine,* 450 U.S. at 253–54, 101 S.Ct. at 1093–94. First, the plaintiff is required to establish a *prima facie* case wherein he must establish the elements of the discrimination claim. If the plaintiff proves his *prima facie* case, a presumption of discrimination arises. *See Bodenheimer v. PPG Industries, Inc.,* 5 F.3d 955, 957 (5th Cir.1993). The burden of production then shifts to the defendant to rebut this presumption by articulating a legitimate, nondiscriminatory reason for the alleged discriminatory action. *See Olitsky v. Spencer Gifts, Inc.,* 964 F.2d 1471, 1478 n. 19 (5th Cir.1992). A defendant meets this burden by proffering admissible evidence of an explanation that would be legally sufficient to justify a judgment for the defendant. *See Guthrie v. Tifco Indus.,* 941 F.2d 374, 376 (5th Cir.1991). The defendant need not persuade the trier of fact that there was no intentional discrimination; it need only produce evidence on that point. *See Hicks,* 509 U.S. at 507, 113 S.Ct. at 2747. Third, once the defendant satisfies this burden, the presumption of discrimination established by the plaintiff's *prima facie* case dissolves. *See Burdine,* 450 U.S. at 255 n. 10, 101 S.Ct. at 1095 n. 10. The plaintiff's burden of persuasion then arises, and the plaintiff must produce evidence that the defendant's proffered reasons are mere pretexts, the real reason

for the action having been based on an impermissible *animus.* *See id.* at 256, 101 S.Ct. at 1095; *Bodenheimer,* 5 F.3d at 959. The plaintiff may succeed here, either by persuading the Court that a discriminatory reason more likely motivated the defendant or by showing that the defendant's proffered reason is unworthy of credence. *Burdine,* 450 U.S. at 256, 101 S. Ct. at 1095. The ultimate burden of proof of intentional discrimination rests at all times on the plaintiff. *See Hicks,* 509 U.S. at 507, 113 S.Ct. at 2749.

Summary judgment is particularly appropriate when the Court is evaluating evidence at the "pretext" stage of the *McDonnell Douglas* analysis.

> "[I]t is relatively easy both for a plaintiff to establish a *prima facie* case and for a defendant to articulate a legitimate, nondiscriminatory reason for his decision.... In the context of summary judgment ...,' the question is not whether the plaintiff proves pretext, but rather whether the plaintiff raises a genuine issue of fact regarding pretext."

*Britt v. The Grocers Supply Co.,* 978 F.2d 1441, 1450 (5th Cir.1992) (quoting *Amburgey v. Corhart Refractories Corp.,* 936 F.2d 805, 811 (5th Cir.1991) (citations omitted)). Speculation and belief are insufficient to create a fact issue as to pretext. *See Britt,* 978 F.2d at 1451. Nor can pretext be established by mere conclusory statements of a plaintiff who feels that he has been discriminated against. *See E.E.O.C. v. Exxon Shipping Co.,* 745 F.2d 967, 976 (5th Cir.1984).

To establish a *prima facie* case of employment discrimination under the ADA, the Plaintiff must show that he:

(1) was "disabled" as that term is defined by the ADA,

(2) is qualified, with or without accommodation, for the position sought,

(3) was subject to adverse employment action, and

(4) was replaced by a non-disabled person or was treated less favorably than nondisabled employees.

---

**2.** *McDonnell Douglas* was refined in *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), and was recently clarified in *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993).

*Norris v. Hartmarx Specialty Stores, Inc.,* 913 F.2d 253, 254 (5th Cir.1990); *accord E.E.O.C. v. Brown & Root, Inc.,* 688 F.2d 338, 340–41 (5th Cir.1982); *E.E.O.C. v. Texas Bus Lines,* 923 F.Supp. 965, 969 (S.D.Tex. 1996).

## IV. ANALYSIS

■ Assuming that Mr. Newman is able to establish that he has a "disability" as defined by the ADA,[3] he cannot establish a *prima facie* case of discrimination under the ADA because he cannot show that he is a "qualified individual." In determining whether a plaintiff is a "qualified individual" with a disability, the Court must first determine whether the plaintiff can perform the essential functions of the job he holds. *See Chandler v. City of Dallas,* 2 F.3d 1385, 1393 (5th Cir.1993); *see also Daugherty,* 56 F.3d at 696. "Essential functions" are those functions that bear more than a marginal relationship to the job at issue. *See Chandler,* 2 F.3d at 1393. Physical criteria, such as the ability to drive, must be necessary and substantially related to a person's ability to perform the essential functions of the job. Evidence of whether a particular function is essential includes, but is not limited to: (1) the employer's judgment as to which functions are essential; (2) written job descriptions prepared before advertising or interviewing applicants for the job; (3) the amount of time spent on the job performing the function; (4) the consequences of not requiring the incumbent to perform the function; (5) the terms of a collective bargaining agreement; (6) the work experience of past incumbents on the job; and/or (7) the current work experience of incumbents in similar jobs. *See* 29 C.F.R. § 1630.2(n)(3) (1995).

Assuming that Plaintiff is suffering from a disablement as alleged in his Complaint, the Court finds that Plaintiff is not qualified for the position from which he was terminated because he cannot perform the essential function of driving a gasoline truck. Although Defendant has failed to provide a job description and has failed to brief this point, the Court notes from the pleadings that Plaintiff was hired as a gas delivery driver. By his own admission, Plaintiff's tasks included driving an eighteen-wheeled semi-tractor trailer from the terminal, where his truck was loaded with highly flammable gasoline, to retail service stations, where this highly flammable fluid was put into underground storage tanks. Regardless of one's mental state, hauling flammable gasoline over the open road is extremely dangerous. Undertaken with a condition that causes loss of concentration and memory, such activity approaches utter recklessness and blatant disregard for the safety of others. During deliveries, Plaintiff drove his truck over the interstate, endangering not only himself but many others in the process. Plaintiff admitted "waking up" while proceeding down the freeway, not knowing where he was or where the time went. In his deposition, Plaintiff admitted that it was possible that he could run over someone with his truck and not notice it. Indeed, by his own admission, Plaintiff's driving in such condition created "a possibility of extreme danger." (Plaintiff's Depo., at 108). Although someone with Plaintiff's condition can likely do a plethora of other tasks, driving a gasoline truck weighing several tons loaded with flammable liquid is certainly not one of them. Plaintiff is not qualified for the position of gas delivery driver as a matter of law. *See Daugherty,* 56 F.3d at 698 (holding that an individual is not qualified for a job if there is a genuine substantial risk that he could be injured or

---

3. Under the ADA, an individual is considered to have a disability if that individual either has "a physical or mental impairment that substantially limits one or more of the major life activities of such individual," or has "a record of such impairment," or is "regarded as having such an impairment." 42 U.S.C. § 12102(2). Plaintiff asserts two bases for disability under the ADA. He initially claims that his concentration problem severely limits one or more of his major life activities, and in the alternative, he contends that Chevron regards him as having such impairment. The Court notes that Plaintiff does not

identify any of the major life activities impaired. Regardless of this omission, the Court observes that Defendant focuses on the existence of a disability in its Motion for Summary Judgment. This focus is misguided. It is apparent to the Court that, at least, a fact issue is raised regarding the existence of a disability. *In this case,* the proper focus for summary judgment purposes is to assume that Mr. Newman is indeed disabled, and then ask whether he can perform his job functions in that condition and whether Chevron is required to accommodate him under the ADA.

could injure others and the employer cannot modify the job to eliminate that risk); *accord Chiari v. City of League City*, 920 F.2d 311, 317 (5th Cir.1991); *see also* 29 C.F.R. § 1630.2(r).[4]

■ If the Court concludes that the plaintiff is not able to perform the essential functions of his job, the question then becomes whether any reasonable accommodation by the employer would enable the plaintiff to perform those functions. *See Chandler*, 2 F.3d at 1394–94; *Chiari*, 920 F.2d at 315. If no reasonable accommodation would enable the plaintiff to perform the essential functions of his position, then he is not a "qualified individual" with a disability and is not afforded the protections of the ADA. *See Guneratne v. St. Mary's Hosp.*, 943 F.Supp. 771, 774 (S.D.Tex.) (Kent, J.), *aff'd* 119 F.3d 3 (5th Cir.1997).[5] Plaintiff has presented the Court with no accommodations that Defendant could make which would allow Plaintiff to continue in his position as a gasoline truck driver. Except for assigning someone else to drive for, or in the cab with, Plaintiff, the Court can think of none that could be made. Plaintiff has not raised the issue of such assignment, and even if argued by Plaintiff, the Court finds it to be unreasonable and not required by the ADA. As this Court has stated in the past: "It is not reasonable to require an employer to have two people doing one person's job in the name of accommodation. Assistance is one thing, but performing a significant portion of the essential functions of another person's job is another thing altogether." *Hershey v. Praxair, Inc.*, 969 F.Supp. 429, 435 (S.D.Tex.1997) (Kent, J.). Moreover, the ADA does not require an employer to eliminate or reallocate essential functions of a position in order to provide accommodation. *See Bradley v. University of Texas M.D. Anderson Cancer Center*, 3 F.3d 922, 925 (5th Cir.1993) (citing *Southeastern Community College v. Davis*, 442 U.S. 397, 407–08, 99 S.Ct. 2361, 2367–68, 60 L.Ed.2d 980 (1979)); *see also* 29 C.F.R. § 1630.2(o) (1995). "Such redefinition exceeds reasonable accommodation." *Bradley*, 3 F.3d at 925 (holding that the ADA does not require an employer to hire an assistant to help a disabled employee fulfill his work responsibilities). Furthermore, Plaintiff presents no evidence, and indeed does not even argue, that Defendant could reassign him to a position which does not involve driving of a gasoline truck. Plaintiff was hired as a gasoline truck driver. For the accommodation of reassignment to be reasonable, a substitute position must first exist and be vacant. *See Foreman v. Babcock & Wilcox Co.*, 117 F.3d 800, 809–10 (5th Cir.1997) ("Under the ADA, an employer is not required to give what it does not have."). Plaintiff, however, has not only failed to argue reassignment, but he has also failed to offer evidence showing that he is otherwise qualified to meet the hiring criteria for any theoretical position to which he could be reassigned.[6] Moreover, Defendant is not required to create positions to accommodate disabled employees. *See Turco v. Hoechst Celanese Chemical Group, Inc.*, 101 F.3d 1090, 1094 (5th Cir.1996) ("The law does not require affirmative action in favor of individuals with disabilities. It merely prohibits employment discrimination against qualified individuals with disabilities, no more and no less.").[7] Thus, the Court con-

---

**4.** Plaintiff alleges that he still suffers from PTSD, but that he has the condition under control at this time. "Even during the deposition of this cause, Plaintiff had to control the PTSD from triggering the 'movies' by redirecting his thoughts." (Plaintiff's Response to Summary Judgment, at 13).

**5.** The Court finds that Plaintiff is in a catch–22 position. If he argues that he has the disability he claims to have, he is not qualified for his position as gas delivery driver. If he argues that he is qualified, he then is not disabled and cannot bring a claim under the ADA.

**6.** "The determination of qualification is two-fold: (1) whether the individual meets the necessary prerequisites for the job, such as education, expe-

rience, skills, and the like; and (2) whether the individual can perform the essential job functions, with or without reasonable accommodation." *Foreman*, 117 F.3d at 810; *see also* 42 U.S.C. § 12111(8); 29 C.F.R. § 1630.2(m) (1994).

**7.** The Court finds the *Turco* case particularly instructive. In that case, the Plaintiff described the requirements of a chemical process operator and then basically described his lack of concentration and other ailments, admitting that he could not fulfill those basic requirements. *See Turco*, 101 F.3d at 1094.

cludes that Defendant is not required by the ADA to reassign Plaintiff to another job. Moreover, Plaintiff cannot perform the duties of gasoline delivery driver, and there is no accommodation that Defendant could have made that would enable the performance of Plaintiff's driving duties. Furthermore, the Court finds that the reassignment to some theoretical position in which no driving is required is not reasonable under the circumstances. Plaintiff therefore fails to state a *prima facie* case as a matter of law.

■ Assuming arguendo that Plaintiff could establish each of the elements of his *prima facie* case, Defendant has articulated a legitimate, nondiscriminatory reason for Plaintiff's termination, warranting the granting of summary judgment under the *Burdine* framework. Defendant gives as the reason for Plaintiff's termination his unsatisfactory performance and his intentional failure to report the January 1996 accident. Plaintiff does not contest the three product mixes or his failure to report the last product mix and the January 1996 accident. Defendant's Uniform Discipline Code clearly states that failure to report an accident or mix is grounds for immediate termination. Plaintiff claims that his failure to report both incidents is a direct result of his mental impairment. Plaintiff is essentially arguing that he could not report what he could not recall. Regardless of the sagacity of employment decisions, erroneous or even arbitrary personnel decisions do not offend the ADA because that statute only prevents employment decisions motivated by a discriminatory motive. *Cf. E.E.O.C. v. Texas Instruments, Inc.*, 100 F.3d 1173, 1182 (5th Cir.1996) (stating that simply because an employer's decision is unfair or unlawful under state law does not create liability under the Age Discrimination in Employment Act); *Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1090 (5th Cir. 1995); *Ray v. Tandem Computers, Inc.*, 63 F.3d 429, 435 n. 19 (5th Cir.1995) ("Title VII does not exist to punish poor management skills...."). Plaintiff argues in his Response that the statements of Diane Jenkins [8] should be disregarded by this Court and should not

have been considered by Defendant when deciding to terminate the Plaintiff. Despite Plaintiff's misguided arguments regarding the veracity of Diane Jenkins, as long as Defendant's motive was not discriminatory in violation of the law, this Court will not question the bases for Defendant's decision to terminate Plaintiff. *See Texas Instruments*, 100 F.3d at 1182–83: *Mayberry*, 55 F.3d at 1091 ("[Plaintiff] misses the mark. The question is not whether an employer made an *erroneous decision;* it is whether the decision was made with discriminatory motive."); *Waggoner v. City of Garland*, 987 F.2d 1160, 1165 (5th Cir.1993). Specifically, Defendant offers six reasons for Plaintiff's termination:

(1) Jenkins' statement;

(2) The investigation of the accident at the station;

(3) The damage to the trailer and the sign;

(4) The statement of the station's night attendant that he heard a large crash at the time of the accident;

(5) The fact that Plaintiff conducted a post-trip investigation of the truck's [sic] and reported no damage to the truck; and

(6) The opinions of Bryant [supervisor] and Crawford that Plaintiff knowingly failed to report the accident.

The Court finds these proffered reasons to be legitimate and nondiscriminatory. Furthermore, although Plaintiff argues that he was fired as a direct result of his disability,[9] "an employee may not 'bootstrap his disease into the line of causation' by showing that the misconduct relied upon by the employer was caused by the disability.'" *Den Hartog v. Wasatch Academy*, 909 F.Supp. 1393, 1401 (D.Utah 1995) (quoting *Siefken v. Village of Arlington Heights*, 65 F.3d 664, 666 (7th Cir.1995)). There is an important distinction between discharging an employee for unacceptable conduct and discharging an employee because of a disability. *See McKey v. Occidental Chem. Corp.*, 956 F.Supp. 1313, 1319 (S.D.Tex.1997); *see also Maddox v. University of Tennessee*, 62 F.3d 843, 848

---

**8.** Diane Jenkins was the witness who asserted that Plaintiff knew of but purposely failed to report the truck accident.

**9.** In other words, notwithstanding assertions to the contrary by witness Diane Jenkins, Plaintiff argues that he could not report what he could not remember.

(6th Cir.1995); *Despears v. Milwaukee County*, 63 F.3d 635, 637 (7th Cir.1995) (Posner, C.J.); *Collings v. Longview Fibre Co.*, 63 F.3d 828, 832 (9th Cir.1995).

Having decided that Defendant has provided a legitimate, nondiscriminatory reason for termination, the Court now turns to the issue of pretext. Plaintiff has failed to present any evidence to support an argument that Defendant's proffered reason for Plaintiff's termination is pretextual. Instead, Plaintiff merely claims that Defendant's reason is "suspicious considering Defendant's knowledge that Plaintiff had always been forthcoming in the past." (Plaintiff's Response to Summary Judgment, at 18). "Speculation and belief are insufficient to create a fact issue as to pretext." *McKey*, 956 F.Supp. at 1319. It is well-settled that conclusory statements by Plaintiff will not suffice. *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir.1996) ("In short, conclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy the non-movant's burden.... It is more than well-settled that an employee's subjective belief that he suffered an adverse employment action as a result of discrimination, without more, is not enough to survive a summary judgment motion, in the face of proof showing an adequate nondiscriminatory reason.") (*en banc*); *see also Ray*, 63 F.3d at 434 (stating that "bald assertions of age discrimination are inadequate to permit a finding that proscribed discrimination motivated [Defendant's] actions against [Plaintiff]"); *Grizzle v. Travelers Health Network, Inc.*, 14 F.3d 261, 268 (5th Cir.1994) (declaring that an employee's "self-serving generalized testimony stating her subjective belief that discrimination occurred ... is simply insufficient to support a jury verdict in plaintiff's favor"); *Little v. Republic Refining Co., Ltd.*, 924 F.2d 93, 96 (5th Cir.1991) ("An age discrimination plaintiff's own good faith belief that his age motivated his employer's action is of little value"); *Hornsby v. Conoco, Inc.*, 777 F.2d 243, 246 (5th Cir.1985) ("We cannot allow subjective belief to be the basis for judicial relief when an adequate nondiscriminatory reason for the discharge has been presented"); *Elliott v. Group Medical & Surgical Serv.*, 714 F.2d 556, 566 (5th Cir. 1983) (opining that "generalized testimony by an employee regarding his subjective belief that his discharge was the result of age discrimination is insufficient to make an issue for the jury in the face of proof showing an adequate, nondiscriminatory reason for his discharge"). The "evidence" offered by Plaintiff here could best be characterized as mere speculation and conjecture. The Fifth Circuit has ruled that such statements are insufficiently probative to create a jury issue. *See, e.g., Guthrie*, 941 F.2d at 379; *Elliott v. Group Medical & Surgical Serv.*, 714 F.2d 556, 565 (5th Cir.1983); *Stendebach v. CPC Int'l, Inc.*, 691 F.2d 735, 738 (5th Cir.1982). Thus, the Court finds the conclusory statements by Plaintiff insufficient to create a fact issue in this case. These statements do not even begin to establish either that: (1) a discriminatory reason more than likely motivated Defendant or (2) Defendant's explanation is unworthy of credence. *See Burdine*, 450 U.S. at 255, 101 S.Ct. at 1095 (noting that in order to avoid summary judgment, the plaintiff must offer some evidence that the legitimate, nondiscriminatory reason proffered is mere pretext); *Britt*, 978 F.2d at 1450 ("[T]he question is not whether the plaintiff proves pretext, but rather the plaintiff raises a genuine issue of material fact regarding pretext."). Accordingly, for the reasons stated above, Defendant's Motion for Summary Judgment is **GRANTED** and Plaintiff's ADA claims are **DISMISSED WITH PREJUDICE.** The parties are **ORDERED** to file no further pleadings on these issues in this Court, including motions to reconsider or the like, unless justified by a compelling showing of new evidence not available at the time of the instant submissions. Instead, the parties are instructed to seek any further relief to which they feel themselves entitled in the Fifth Circuit Court of Appeals, as may be appropriate in due course. **IT IS SO ORDERED.**

### *FINAL JUDGMENT*

For the reasons set forth in the Order Granting Summary Judgment issued by the Court on this day, all of Plaintiff's claims are hereby **DISMISSED WITH PREJUDICE.** The parties are **ORDERED** to bear their

own taxable costs and expenses incurred herein to date.

**THIS IS A FINAL JUDGMENT.**