**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

---

No. 92-1849

---

LYLE S. CHANDLER and ADOLPHUS A.
MADDOX, on behalf of themselves
and others similarly situated,

                                        Plaintiffs-Appellees,


VERSUS


THE CITY OF DALLAS, ET AL.,

                                        Defendants,

THE CITY OF DALLAS,

                                        Defendant-Appellant.

---

Appeal from the United States District Court
for the Northern District of Texas

---

(September 20, 1993)

Before SMITH, DUHÉ, and WIENER, Circuit Judges.

WIENER, Circuit Judge:

     In 1978, the City of Dallas, Texas (Dallas or the City)
adopted a Driver Safety Program (the Program) to reduce the risk
of vehicular collisions.  The Program established certain
physical standards for city employees who drive on public roads
as an intrinsic part of their job duties.  Employees of this type
are referred to as Primary Drivers.  The physical standards
required by the Program were patterned on safety regulations

promulgated by the United States Department of Transportation. If an employee did not meet these standards, he could not be certified as a primary driver and thus was ineligible for Primary Driver jobs.[1]

Two of the medical standards for Primary Drivers are of particular importance to the instant appeal. A Primary Driver: (1) cannot have an established medical history of diabetes mellitus severe enough to require insulin for control; and (2) must have 20/40 vision (corrected) and a field of vision of at least 70 degrees in the horizontal meridian in each eye. Plaintiff Lyle Chandler has diabetes mellitus that requires insulin for control. Plaintiff Adolphus Maddox has impaired vision in his left eye that cannot be corrected to meet minimum standards. Both of these plaintiffs held positions with the City that were classified as Primary Driver jobs.[2] Only 138 of the City's job classifications were considered Primary Driver jobs.

Chandler has required insulin for control of his diabetes since 1977 and has been an employee of Dallas since 1981. In

_____

[1] Apparently, no waiver initially was available for failure to meet a standard. Presently, all conditions are waivable except substandard vision, alcoholism, and drug abuse.

[2] The positions held by Chandler and Maddox were subsequently reclassified as non-primary driver jobs. The plaintiffs do not allege any impropriety in either the original classification or in the later reclassification. Neither do they contest the City's assertion that these positions were reclassified because the amount of driving associated with both positions had decreased. Additionally, Chandler has subsequently applied for and received a waiver allowing him to apply for primary driver positions.

1985, the Chandler failed his initial driver's physical because of his diabetes. At that time he was employed as an Electrical Repairer T-9, a Primary Driver position. Chandler was allowed to retain that position on the condition that he be driven by another co-worker when he had to go to another work site.

Chandler has had at least two major on-the-job hypoglycemic episodes that required emergency medical treatment. He also admits that he has had numerous other minor hypoglycemic incidents, during which he was confused. Chandler has also had a series of safety and misconduct incidents on the job. In 1986, he caused a serious electrical accident that resulted in injuries to himself and two co-workers. That same year, after a subsequent safety violation and violation of personnel rules, Chandler was demoted to Electrical Repairer T-7.

Maddox was hired by the City in 1982 and was promoted to Plant Mechanic T-7 in 1983. Maddox failed his initial driver's physical in 1985 because of poor vision in his left eye. Among other problems, his vision in his left eye cannot be corrected to better than 20/60 and his horizontal field of vision in that eye is less than 70 degrees. As with Chandler, Maddox was allowed to retain his then current position (which was also classified as a Primary Driver position) on the condition that a co-worker drive him when he needed to work at other facilities.

In December 1985, Chandler and Maddox filed suit against the City, alleging that the Program discriminated against them in

violation of the Rehabilitation Act[3] (the Act), the Fourteenth Amendment, and 42 U.S.C. § 1983. They also sought to represent a class of persons adversely affected by the Program. The complaint was subsequently amended to include claims under the Revenue Sharing Act[4] and the Texas Commission on Human Rights Act.[5]

The district court certified two classes of plaintiffs (those with substandard vision and those with insulin dependent diabetes) for purposes of injunctive relief. After a bench trial, the court rendered judgment for the plaintiffs, but failed to make findings of fact and conclusions of law. The City appealed, and we vacated the judgment and remanded the case "for detailed findings of fact and concomitant conclusions of law."[6] On remand, the district court reinstated its judgment and made findings of fact and conclusions of law. The City has again timely appealed.

## II

## ANALYSIS

A. <u>The Rehabilitation Act</u>

The Act prohibits discrimination against otherwise qualified individuals with handicaps in programs that receive federal

---

[3] 29 U.S.C. § 701-796.

[4] 31 U.S.C. § 6701 et seq..

[5] Tex. Rev. Civ. Stat. Ann. art. 5221k.

[6] <u>Chandler v. City of Dallas</u>, 958 F.2d 85, 90-91 (5th Cir. 1992).

financial assistance.[7]  The Act is intended to ensure that handicapped individuals receive the same treatment as those without handicaps.[8]  To qualify for relief under this statute, a plaintiff must prove that (1) he was an "individual with handicaps"; (2) he was "otherwise qualified"; (3) he worked for a "program or activity" that received federal financial assistance; and (4) he was adversely treated solely because of his handicap.[9] The burden of proof for each of these elements lies with the plaintiff.[10]

1.    Individual with Handicaps

The relevant definition of the term "handicap" is critical to determining when a person can recover under the Act.  For employment purposes, the Act defines an "individual with handicaps" as a person "who (i) has a physical or mental impairment which substantially limits one or more of such person's major life activities, (ii) has a record of such an impairment, or (iii) is regarded as having such an impairment."[11] The plaintiffs argue both that they are handicapped under

_____

[7] The Act has been amended since the instant suit was filed. Among the changes to the Act was the substitution of the term "individual with a disability" for the original term "individual with handicaps."  As we are required to apply the statute as it existed when this suit was filed (See Chiari v. City of League City, 920 F.2d 311, 315 (1991)), we will continue to use this now superseded terminology.

[8] Chiari, 920 F.2d at 315.

[9] Id.; see 29 U.S.C.S. § 794.

[10] Chiari, 920 F.2d at 315.

[11] 29 U.S.C.S. § 706(8)(B) (1990).

subsection (i) and that the City treated them as being handicapped under subsection (iii).  Predictably, the City takes the opposite position on both of these claims.

Although the Act contains a definition of "handicap," it does not define the terms used in that definition.  We are not without guidance, however, for the Supreme Court directs us to the Department of Health and Human Services (DHHS) regulations intended to implement the Act.[12]  Those regulations define a physical impairment as

> any physiological disorder or condition, cosmetic disfiguration, or anatomical loss affecting one or more of the following body systems: neurological; musculoskeletal, special sense organs; respiratory, including speech organs, cardiovascular; reproductive, digestive, genito-urinary; hemic and lymphatic; skin; and endocrine.[13]

"Major life activities" are defined as "functions such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working."[14]

According to these same regulations, a person is regarded as having an impairment that would constitute a handicap if he

> (A) has a physical or mental impairment that does not substantially limit major life activities but that is treated by [an employer] as constituting such a limitation;
> (B) has a physical or mental impairment that substantially limits major life activities only as a result of the attitudes of others toward such impairment; or

---

[12] School Board of Nassau Co. v. Arline, 480 U.S. 273, 280 (1987).

[13] 45 C.F.R. § 84.3(j)(2)(i) (1992).

[14] 45 C.F.R. § 84.3(j)(2)(ii) (1992).

(C) has none of the [above described impairments] but is treated by [an employer] as having such an impairment.[15]

a.    Impaired Vision as a Handicap

This court has previously held that a person is not handicapped if his vision can be corrected to 20/200.[16]  Clearly, if vision that can be corrected only to 20/200 does not constitute a handicap, neither does vision that can be corrected to 20/60.  Further, Maddox himself testified at length that his impaired vision did not substantially limit any of his major life activities.  As Maddox failed to establish that his impaired vision substantially limits one or more of his major life activities, he is not handicapped under the first prong of the statutory definition of an individual with handicaps.[17]

b.    Insulin Dependent Diabetes as a Handicap

The City contends that Chandler is not handicapped because he failed to establish that his insulin dependent diabetes substantially limits any of his major life activities.  Indeed Chandler himself testified that he did not consider his diabetes to be a substantial limitation on his major life activities.  Given this testimony and the absence of any evidence to the contrary, we hold that Chandler failed to establish that he was handicapped by his insulin dependent diabetes.

---

[15] 45 C.F.R. § 84.3(j)(2)(iv) (1992).

[16] Collier v. City of Dallas, No. 86-1010 (5th Cir. August 19, 1986) (unpublished).

[17] See 29 U.S.C.S. § 706(8)(B)(i) (1990).

7

Chandler advances an alternative argument that insulin dependent diabetes should be considered a handicap per se. Neither this nor any other circuit court has addressed whether insulin dependent diabetes constitutes a handicap per se. No explicit guidance is available from the Act itself or the DHHS regulations as neither expressly discusses diabetes. Chandler therefore bases his argument on language contained in the commentary to the Equal Employment Opportunity Commission (EEOC) regulations promulgated to implement the Americans with Disabilities Act (the ADA).

The ADA defines a disability in substantially the same terms as the Act defines an individual with handicaps (now an individual with a disability).[18] Stressing the similarities between the Act and the ADA, Chandler urges us to look to the ADA and the regulations promulgated under that act for additional guidance as to what constitutes a handicap under the Act.

The EEOC's implementing regulations for the ADA became effective on July 26, 1992.[19] In them, the EEOC uses the same

---

[18] Compare Rehabilitation Act, 29 U.S.C. § 706(8)(B) (defining an "individual with handicaps" (now an "individual with a disability") as a person "who (i) has a physical or mental impairment which substantially limits one or more of such person's major life activities, (ii) has a record of such an impairment, or (iii) is regarded as having such an impairment") with Americans with Disabilities Act, 42 U.S.C. § 12102 (defining the term disability, with respect to an individual, as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment").

[19] See 29 C.F.R. part 1630, § 1630.1 (1992).

8

definitions for key terms as does the DHHS in its regulations implementing the Act.[20]

The EEOC also included an appendix to 29 C.F.R. part 1630 entitled "Interpretive Guidance on Title I of the Americans with Disabilities Act." In the Interpretive Guidance, the EEOC notes that the ADA term "disabilities" is substantively equivalent to the term "handicaps" in the Act.[21] Of particular significance to the instant case is another statement in this appendix. In its discussion of the term "substantially limits," the EEOC states that "a diabetic who without insulin would lapse into a coma would be substantially limited because the individual cannot perform major life activities without the aid of medication."[22]

Thus, the EEOC apparently considers that any insulin dependent diabetic has a disability per se under the ADA. The issue remains whether this statement mandates that such a person also has a handicap per se under the Act. Nonetheless, we need not decide that issue today because even if we assume arguendo that Chandler is "handicapped" for purposes of the Act, he has failed to establish that he was "otherwise qualified" for Primary Driver jobs.[23]

c.    Regarded as Handicapped

---

[20] See 29 C.F.R. § 1630.2 (1992).

[21] 29 C.F.R. Part 1630, Appendix to Part 1630))Interpretive Guidance on Title I of the Americans with Disabilities Act, § 1630.1(a).

[22] Id. at § 1630.2(j).

[23] See infra Part II(A)(2).

9

Maddox and Chandler alternatively argue that they are handicapped under the third prong of the statutory definition because the City regards them as having such impairments.[24] They insist that the City regarded them as handicapped because it excluded them from Primary Driver jobs based on their impairments. According to the plaintiffs, this exclusion, by itself, constitutes a substantial limitation on one of their major life activities, i.e., working.

The issue of how limiting an employer must consider an employee's impairment to be before the employer is held to regard the employee as handicapped has been addressed by several courts. In Forrisi v. Bowen,[25] the Fourth Circuit considered the case of an employee with acrophobia (a fear of heights) who was discharged from his job because he could not climb ladders or stairs to certain heights, an integral part of his job. The employee subsequently sued under the Act, claiming that he was handicapped solely because the employer perceived him as being handicapped. The Fourth Circuit held that the employer did not regard the employee as handicapped simply because it found that he could not meet the demands of this particular job. "The statutory reference to a substantial limitation indicates instead that an employer regards an employee as handicapped in his or her ability to work by finding the employee's impairment to foreclose

---

[24] See 29 U.S.C.S. § 706(8)(B)(iii) (1990).

[25] 794 F.2d 931 (4th Cir. 1986).

10

generally the type of employment involved."[26]

The Sixth Circuit held in <u>Jasany v. United States Postal Service</u> that, as a matter of law, an employee with strabismus (commonly knowns as "crossed eyes") was not regarded an handicapped when he was fired from a position which his strabismus prevented him from properly performing.[27] The court suggested that a number of factors should be considered in determining whether a given impairment substantially limits an individual's employment potential. These factors included the number and type of jobs from which the individual was disqualified, the geographic area to which he has reasonable access, and the individual's employment qualifications.[28] The court concluded, "An impairment that affects only a narrow range of jobs can be regarded either as not reaching a major life activity or as not substantially limiting one."[29]

This court also has previously addressed this subject,

---

[26] <u>Id.</u> at 935.

[27] 755 F.2d 1244, 1249-50 (6th Cir. 1985).

[28] <u>Id.</u> at 1249; <u>see also</u> <u>Welsh v. City of Tulsa</u>, 977 F.2d 1415, 1419 (10th Cir. 1992) (applying these factors in affirming summary judgment against plaintiff on grounds that he failed to establish that he was regarded as handicapped).

[29] 755 F.2d at 1249 n.3. Such a "narrow range of jobs" need not be numerically insignificant. <u>See</u>, <u>Daley v. Koch</u>, 892 F.2d 212, 215 (2d Cir. 1989) (holding that a perceived impairment that prevented the plaintiff from successfully applying for a position as a police officer for the City of New York did not constitute a substantial limitation of a major life activity). This court takes judicial notice that New York City employs over 27,000 police officers, considerably more positions than are at issue in the instant suit.

11

albeit in abbreviated form.  In an unpublished opinion, we affirmed the district court's determination in Elstner v. Southwestern Bell Telephone Co.[30] that Southwestern Bell did not regard Elstner as handicapped.  Elstner was employed by Southwestern Bell as a service technician, a job in which he was required to climb telephone poles as an integral part of his job.  After Elstner injured his knee, he could no longer climb poles.  As a result, he was demoted to a lower paying job that did not require him to climb poles.  Elstner filed suit against Southwestern Bell alleging, inter alia, violation of the Act.  The district court found that Elstner failed to establish that he was handicapped; that his impairment did not substantially limit a major life activity, and he was not regarded as handicapped by Southwestern Bell on account of his impairment.[31]  The district court found that even though Elstner had an impairment, it did not substantially limit his ability to work or Southwestern Bell's perception of his ability to work.  Instead, Elstner's injured knee disqualified him only from those positions that required climbing.[32]  Southwestern Bell's perception that he was able to work in other positions was evidenced by its retention of Elstner in a position that did not require climbing.[33]  We

---

[30] 863 F.2d 881 (5th Cir. 1988) (unpublished opinion), aff'q 659 F. Supp. 1328 (S.D. Tex. 1987).

[31] 659 F. Supp. at 1343.

[32] Id.

[33] Id.

12

subsequently affirmed the district court's conclusion that Elstner was not handicapped: "Because the plaintiff presented no evidence that he was substantially limited in [a] major life activity or in performing work-related functions in general, he was not a handicapped person under either federal or state law."[34]

In the instant case, both Chandler and Maddox appear to have been capable of safely performing all duties of their respective positions except driving. Significantly, the City recognized their abilities to perform the balance of the duties associated with the respective positions of Electrical Repairer and Plant Mechanic. The City was aware of both subjects' impairments when it hired them, but it hired them nonetheless. When their jobs were classified as Primary Driver jobs, the City did not fire or demote them to non-Primary Driver positions.[35] Instead, it retained them in those positions and ensured that another employee would be available to drive for them. Neither did the City bar them from promotional opportunities; they were only disqualified from applying for Primary Driver positions. And, promotional pathways that did not involve such positions remained

---

[34] 863 F.2d 881, slip op. at 2; see also de la Torres v. Bolger, 610 F. Supp. 593, 596-97 (N.D. Tex. 1985), aff'd, 781 F.2d 1134 (5th Cir. 1986) ("An impairment that interferes with an individual's ability to do a particular job, but does not significantly decrease that individual's ability to obtain satisfactory employment otherwise is not `substantially limiting' for purposes of the Rehabilitation Act.")

[35] Cf. Forrisi v. Bowen, 794 F.2d 931 (employee terminated); Jasany, 755 F.2d 1244 (employee demoted).

available to both Chandler and Maddox.

An employer's belief that an employee is unable to perform one task with an adequate safety margin does not establish per se that the employer regards the employee as having a substantial limitation on his ability to work in general. The only relevant limitation perceived by the City regarding the plaintiffs' ability to work concerned their abilities to drive City vehicles on the job without risk to themselves or others. Chandler and Maddox failed to adduce sufficient evidence to support a finding that the City regarded them as handicapped.

2. "Otherwise Qualified"

Taken literally, "otherwise qualified" could be defined to include those persons who would be able to meet the particular requirements of a particular program "but for" the limitations imposed by their handicaps. The Supreme Court, however, expressly disapproved of such an interpretation because of the absurd results that would be produced.[36] "Under such a literal reading, a blind person possessing all the qualifications for driving a bus except sight could be said to be `otherwise qualified' for the job of driving. Clearly, such a result was not intended by Congress."[37] The Supreme Court instead defined an otherwise qualified person as "one who is able to meet all of

---

[36] Southeastern Community College v. Davis, 442 U.S. 397, 406 (1979).

[37] Id. at 407 n.7.

14

a program's requirements in spite of his handicap."[38]

The definition of a qualified handicapped individual also includes a personal safety requirement))an otherwise qualified handicapped individual is defined as one who "can perform the essential functions of the position in question without endangering the health and safety of the individual or others."[39] "[U]nder section 504, an individual is not qualified for a job if there is a genuine substantial risk that he or she could be injured or could injure others, and the employer cannot modify the job to eliminate that risk."[40]

Therefore, to determine whether an individual is otherwise qualified for a given job, we must conduct a two part inquiry. First, we must determine whether the individual could perform the essential functions of the job, i.e., functions that bear more than a marginal relationship to the job at issue.[41] Second, if (but only if) we conclude that the individual is not able to perform the essential functions of the job, we must determine whether any reasonable accommodation by the employer would enable him to perform those functions.[42] As with establishing the existence of a handicap, the burden lies with the plaintiff to

---

[38] Id. at 406 (emphasis added).

[39] Chiari, 920 F.2d at 317 (internal quotation, emphasis, and footnote omitted).

[40] Id.

[41] Id. at 315.

[42] Id.

show that he is otherwise qualified.[43]

Under the Program, the City established three distinct categories of drivers. Primary Drivers are those City employees who are certified to operate a motor vehicle on public thoroughfares for the City as an _intrinsic_ part of their job duties. Secondary Drivers are those City employees who are certified to operate a motor vehicle on public thoroughfares for the City as an _adjunct_ duty to their job. Tertiary Drivers are those City drivers who operate motor vehicles and automotive equipment on City property where public access is limited. Only Primary Drivers are subject to the strict physical standards of the Program.

The plaintiffs do not seriously contest the City's assertion that driving is an essential function of every Primary Driver positions. Instead, they argue that they can safely perform all of the functions of their respective jobs, including driving, without accommodation. In taking that approach, the plaintiffs failed to adduce sufficient evidence that would support a finding that they were otherwise qualified for Primary Driver positions.

The Program is based on regulations promulgated by the Federal Highway Administration, Department of Transportation, to promote, inter alia, safe operation of motor vehicles.[44] These regulations provide in pertinent part that:

---

[43] _Id._

[44] _See_ 53 Fed. Reg. 18042 (1988); 35 Fed. Reg. 6458 (1970); 34 Fed. Reg. 9080, 9081 (1969).

16

A person is physically qualified to drive a motor vehicle if that person))

. . . .

(3) Has no established medical history or clinical diagnosis of diabetes mellitus currently requiring insulin for control; [and]

. . . .

(10) Has distant visual acuity of at least 20/40 (Snellen) in each eye without corrective lenses or visual acuity separately corrected to 20/40 (Snellen) or better with corrective lenses, distant binocular acuity of at least 20/40 (Snellen) in both eyes with or without corrective lenses, field of vision of at least 70° in the horizontal meridian in each eye, and the ability to recognize the colors of traffic signals and devices showing standard red, green and amber;

. . . .[45]

These regulations, including the provisions relating to insulin dependent diabetes and impaired vision, have been in effect since 1970.[46] Since that time, the Federal Highway Administration has had numerous opportunities to revisit these regulations, and to update and amend them if need be.[47] Yet, the physical requirements regarding insulin dependent diabetes and impaired vision have remained unchanged. The statement of the Administrator of the Federal Highway Administration in the preamble to the proposed regulations remains valid to this day: "Accident experience in recent years has demonstrated that reduction of the effects of organic and physical disorders, emotional impairments, and other limitations of the good health

_____

[45] 49 C.F.R. § 391.41(b) (1992).

[46] See 34 Fed. Reg. 9080 (1969) (notice of proposed rule making); 35 Fed. Reg. 6458 (1970) (notice of final rule).

[47] See 55 Fed. Reg. 3546 (1990); 53 Fed. Reg. 47134 (1988); 53 Fed. Reg. 18042 (1988); 51 Fed. Reg. 17568 (1986); 43 Fed. Reg. 56900 (1978); 36 Fed. Reg. 12857 (1971); 36 Fed. Reg. 222 (1971); 35 Fed. Reg. 17419 (1970).

17

of drivers are increasingly important factors in accident prevention."[48]

After implementing these regulations, the Federal Highway Administration received several petitions for reconsideration. The Director of the Bureau of Motor Carrier Safety (acting under authority delegated to him by the Administrator) responded to objections that the medical qualifications of § 391.41 were unduly stringent by stating: "In this area, however, the Director believes that the risks are so well known and so serious as to dictate the utmost caution. Hence, except as noted below, the physical qualifications are unchanged."[49] The standards for diabetes and vision are not among those that were altered in response to these petitions for reconsideration.

The issue whether an insulin dependent diabetic is otherwise qualified for positions involving driving or other high risk activities has been addressed by several federal courts. Those courts have uniformly held that insulin dependent diabetics present an unacceptable risk, and are thus not otherwise qualified, to be employed as, inter alia, sanitation truck drivers[50] or special agents with the Federal Bureau of

---

[48] 34 Fed. Reg. at 9081; see also 35 Fed. Reg. at 6458 (stating that the Administrator remains convinced that this statement "still holds true.").

[49] 35 Fed. Reg. at 1749.

[50] Serrapica v. City of New York, 708 F. Supp. 64, 73 (S.D.N.Y. 1989).

18

Investigation.[51]  We are aware of no cases holding that insulin dependent diabetes does not present an significant risk in connection with the operation of motor vehicles on public highways.

We hold that, as a matter of law, a driver with insulin dependent diabetes or with vision that is impaired to the extent discussed in 49 C.F.R. § 391.41 presents a genuine substantial risk that he or she could be injured or could injure others.[52] We echo the sentiment expressed by another panel of this court in Collier: "Woe unto the employer who put such an employee behind the wheel of a vehicle owned by the employer which was involved in a vehicular accident."[53]

As neither Chandler nor Maddox was otherwise qualified for Primary Driver positions in the absence of any employer accommodation, we must answer the second question of the analysis))whether any reasonable accommodation by the City would have enabled them to perform the essential functions of those

---

[51] Davis v. Meese, 692 F. Supp. 505, 521 (E.D. Pa. 1988), aff'd, 865 F.2d 592 (3d Cir. 1989).

[52] We nonetheless share the hope of the court in Davis that medical science will soon progress to the point that "exclusions on a case by case basis will be the only permissible procedure; or, hopefully, methods of control may become so exact that insulin-dependent diabetics will present no risk of ever having a severe hypoglycemic episode."  692 F. Supp. at 520.  But, as Chandler's two severe hypoglycemic reactions while employed by the City amply demonstrate, it has not yet reached that point.

[53] Collier v. City of Dallas, No. 86-1010, slip op. at 3 (5th Cir. August 19, 1986) (unpublished).

19

positions.[54]  For if reasonable accommodation will not eliminate a significant safety risk, a handicapped person is not otherwise qualified.[55]

The record is conspicuously devoid of any evidence from Chandler or Maddox that reasonable accommodation was possible, much less that it would eliminate any safety risk inherent in their driving.[56]  This evidentiary void is fatal to Plaintiffs' claims, given their burden of establishing that reasonable accommodation is possible so that they would be otherwise qualified for their respective positions if they were so accommodated.[57]  As we find that neither plaintiff was otherwise qualified, in the absence of accommodation, because the posed a substantial risk of injury, the absence of evidence that reasonable accommodation could be made eschews the possibility that either plaintiff was "otherwise qualified."  Therefore, the trial court clearly erred in holding that the plaintiffs were otherwise qualified for Primary Driving positions.

It follows that, as neither Chandler nor Maddox adduced

---

[54] Chiari, 920 F.2d at 315.

[55] Arline, 480 U.S. at 287 n.16.

[56] Cf. Wood v. Omaha School Dist., 985 F.2d 437, 438-39 (8th Cir. 1993) (holding that Type II (non-insulin dependent) diabetic plaintiffs raised a genuine issue of material fact by presenting evidence regarding how they could readily monitor their blood sugar levels and maintain them at proper levels during work so as to reduce or eliminate the risk of a hypoglycemic reaction while driving).

[57] Chiari, 920 F.2d at 315; Wood v. Omaha School Dist., 985 F.2d 437, 439 (8th Cir. 1993).

20

sufficient evidence to support findings that they were both handicapped and otherwise qualified, their claims under the Act necessarily fail. We therefore need not address the remaining elements of their claims under the Act, i.e., whether they worked for a program or activity that received federal financial assistance and whether they were adversely treated solely because of any handicap.

C.  Class Certification

The City argues that the district court improperly certified the two subclasses of plaintiffs because the determinations of whether an individual is handicapped or "otherwise qualified" are necessarily individualized inquiries. We agree.

"The question of whether an impairment constitutes a substantial limitation to a major life activity is best suited to a case-by-case determination."[58]

> To answer this question [of whether a person is otherwise qualified] in most cases, the District Court will need to make an individualized inquiry and made appropriate findings of fact. Such an inquiry is essential if § 504 is to achieve its goal of protecting handicapped individuals from deprivations based on prejudices, stereotypes, or unfounded fear, while giving appropriate weight to such legitimate concerns of grantees as avoiding exposing others to significant health and safety risks.[59]

As the facts of the instant case amply demonstrate, the effect of

_____

[58] Elstner v. Southwestern Bell Telephone Co., 659 F. Supp. 1328, 1342 (S.D. Tex. 1987), aff'd, 863 F.2d 881 (5th Cir. 1988) (internal quotation omitted); see also Forrisi v. Bowen, 794 F.2d 931, 933 (4th Cir. 1986) ("The inquiry is, of necessity, an individualized one))whether the particular impairment constitutes for the particular person a significant barrier to employment.").

[59] Arline, 480 U.S. at 287 (emphasis added).

21

a given type of impairment, both on major life activities in general and on a person's ability to perform specific tasks, can vary widely from individual to individual. One person with impaired vision may simply need to wear glasses, while another may need a guide dog. The prospect of continuing medical advances in the treatment of diabetes (at an inherently unpredictable rate), further supports the need for individualized inquiries in this area. We conclude that class certification and class relief are inappropriate in the instant case.

D. Constitutional Rights

The district court awarded the plaintiffs equitable relief and compensatory damages under 42 U.S.C. § 1983 for violations of their Constitutional rights. The plaintiffs argue that their First Amendment rights were violated by the City's taking retaliatory action against them for opposing the application of the Program. They also argue that they were denied equal protection and due process because the City did not have a rational basis for discriminating against them and because Chandler was not given adequate opportunity to be heard in relation to his demotion.

The City responds by insisting that the plaintiffs' failure properly to plead a First Amendment cause of action precluded the district court from rendering judgment for them on such a cause of action. Rule 8 of the Federal Rules of Civil Procedure does require "a short and plain statement of the claim showing that

22

the pleader is entitled to relief."[60]  Although the plaintiffs

failed to comply with this rule, their First Amendment claim was

included in the Joint Pre-Trial Order.  Once entered, the pre-

trial order generally controls the scope and course of the

trial.[61]  Further, the City has failed to demonstrate any

prejudice resulting from the failure of the plaintiffs properly

to amend their pleadings.  Nonetheless, assuming without so

deciding that the plaintiffs were not precluded from bringing

this claim, they failed to adduce sufficient evidence to support

a judgment in their favor.  Even if we make the additional

assumption that the plaintiffs engaged in protected speech (a

proposition on which we have serious doubts), they failed to

establish any causal nexus between such speech and any injury

they may have incurred.

The plaintiffs' equal protection and due process claims are

equally meritless.  As discussed at length above, and contrary to

the district court's conclusion, the City did have a rational

basis for adopting and maintaining the Program and its

classification of the plaintiffs.  And, even though the City

apparently did not afford Chandler all the latitude he desired at

the administrative hearing concerning his demotion, the hearing

it did provide was constitutionally adequate.[62]

---

[60] Fed. R. Civ. P. 8(a)(2).

[61] Flannery v. Carroll, 676 F.2d 126, 129 (5th Cir. 1982).

[62] See Davis v. Scherer, 468 U.S. 183, 192 & n.10 (1984); Arnett v. Kennedy, 416 U.S. 134 (1974).

23

As the plaintiffs have failed to establish any actionable violation of their constitutional rights, they are not entitle to relief under 42 U.S.C. § 1983.

E.   Texas Commission on Human Rights

The Texas Supreme Court has adopted a very restrictive definition of "handicap" for purposes of the Texas Commission on Human Rights Act.[63]  In Chevron Corp. v. Redmon,[64] that court expressly rejected the definition of an "individual with handicaps" from the federal Rehabilitation Act.[65]  The court instead defined handicap as a disability "which is generally perceived as severely limiting in performing work-related functions in general."[66]  Further, "a person may not sue [under art. 5221k] if his handicap impairs his ability to do that particular job."[67]  The court also decided, as a matter of law, that vision which could not be corrected to 20/60 or better did not constitute "those severe impairments which article 5221k was intended to protect."[68]  The failure of the plaintiffs' claims under the Rehabilitation Act clearly precludes them from recovering under the stricter Texas statute.

---

[63] Tex. Rev. Civ. Stat. Ann. art 5221k.

[64] 745 S.W.2d 314 (Tex. 1987).

[65] Id. at 318.

[66] Id.

[67] Id.

[68] Id.

24

## III

## CONCLUSION

The plaintiffs failed to establish that they were both handicapped and otherwise qualified, either with or without reasonable accommodation by the City, for Primary Driver positions. Consequently, their claims under the Rehabilitation Act must fail. Further, class certification and relief are inappropriate in the instant case, given the strong preference for individualized determinations under the Act. As the plaintiffs' claims fail to meet the standards of the Act, so to do they fail to meet the more stringent standards of the Texas Commission on Human Rights Act. Finally, the plaintiffs failed to establish any Constitutional violations that would permit recovery under 42 U.S.C. § 1983.

For the foregoing reasons, we REVERSE the decision of the district court and RENDER judgment for the City of Dallas on all counts and in all respects.