**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**FEB 4 2004**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

FRED A. McGESHICK,

        Plaintiff-Appellant,

v.

ANTHONY J. PRINCIPI, in his
official capacity as Secretary, United
States Department of Veteran Affairs,

        Defendant-Appellee.

No. 03-2021

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**
**(D.C. No. CIV-02-76 PJK/LFG)**

---

Submitted on the briefs:

Gregory M. Acton of Gregory M. Acton, PC, Albuquerque, New Mexico, for
Plaintiff-Appellant.

David C. Iglesias, United States Attorney, and Phyllis A. Dow, Assistant United
States Attorney, Albuquerque, New Mexico, for Defendant-Appellee.

---

Before **McCONNELL** , **ANDERSON** , and **BALDOCK** , Circuit Judges.

---

**ANDERSON** , Circuit Judge.

---

Plaintiff-appellant Fred McGeshick alleges that he was discriminated against in the hiring process for a job with the U.S. Department of Veterans Affairs in violation of the federal Rehabilitation Act of 1973. 29 U.S.C. § 701 *et seq*. Both McGeshick and the Secretary of the Department moved for summary judgment, which the district court granted in favor of the Secretary. McGeshick appeals. We exercise jurisdiction over his appeal under 42 U.S.C. § 2000e-16, and we affirm the district court's decision.[1]

**Background**

In December 1998, McGeshick applied for the position of housekeeping aid at the Albuquerque Veterans Affairs Medical Center (the VA hospital). McGeshick passed an initial personal interview, but could not be offered the job until he satisfactorily completed a physical examination. A review of McGeshick's medical history revealed, however, that he had active Meniere's disease, and that he had been undergoing treatment at the VA for associated hearing loss, ringing in the ears (tinnitus), and vertigo. The physicians at the VA recommended that McGeshick not be hired because he would be a safety hazard to himself and others in performing the heavy manual labor required of a

_____

[1] After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

housekeeping aid.  There is no allegation that any motivation aside from this concern for safety played a role in the VA's decision making process. McGeshick was not offered the job.

Housekeeping aids at the VA hospital perform the "routine cleaning of primarily patient areas, secondarily office areas."  Test. of Raymond Sanders, Chief of Environmental Management for the VA Hospital, Aplt. App. at 111. They wash walls, clean "windows, screens, ledges, stairwells, elevators, offices, day room/lobby furniture, fans, air conditioning ducts and light fixtures." *Id.* at 7-8.  The listed physical requirements for the position are regularly to lift and to carry twenty to fifty pounds (and occasionally fifty to 100 pounds); regularly to sit, stand, walk, kneel, bend, stoop, twist, pull, push; and to be capable of simple grasping, fine manipulation, and reaching above the shoulder.  A housekeeping aid must climb stairs and ladders as needed.

In explaining why he was concerned about McGeshick's safety in the position, Raymond Sanders, the Chief of Environmental Management at the VA hospital, testified that he was afraid McGeshick would not be able to stand safely on ladders, work in stairwells, or wash the outside of upper-floor windows.[2]  The

---

[2]  In the witness's words:

> I think his [McGeshick's] safety would be a concern, with that
> condition.  He would be working in stairwells.  He would be working
> (continued...)

Chief also testified that he would have deferred to the decision of the VA's medical staff had they determined McGeshick could have performed the job safely. Staffing constraints prohibited accommodation of McGeshick's limitations.

In January 1999, the VA notified McGeshick that he had failed the physical examination and would not be considered qualified for the job of housekeeping aid because his medical condition presented "an unacceptable safety and health risk and is likely to adversely affect your ability to perform the full range of duties required for the position." Aplt. App. at 179, 183. McGeshick was, however, encouraged to apply for other jobs within the VA for which he might be qualified. *McGeshick v. Principi*, No. 02CV76PK/LFG-AGE, slip op. at 3 (D. N.M. Jan. 8, 2003) [hereinafter Slip Op.].

In January 2002, McGeshick timely filed a complaint against the Secretary in federal court for the District of New Mexico.[3] His complaint alleged

---

[2](...continued)
> on ladders. I have, for example, to send someone out on a ledge today to clean windows on the sixth floor. That's outside the hospital. Obviously, he wouldn't be able to handle that. There would be a definite safety issue with that problem.

Sanders Test., Aplt. App. at 110.

[3]     In June 1999, McGeshick filed a complaint with the VA alleging employment discrimination on the basis of a perceived disability. In December 2000, the agency mailed a copy of its final decision denying McGeshick's claim.

(continued...)

discrimination on the basis of the VA's perception that McGeshick was substantially limited in the major life activities of "standing, climbing, hearing, stooping, bending, lifting and/or working." Compl., Aplt. App. at 9. McGeshick's complaint asserted that he *could*, in fact, have performed the job without accommodation, and therefore the question of accommodation was not at issue.

The district court denied the motion McGeshick made for summary judgment and granted judgment in favor of the Secretary. The court concluded that McGeshick had not established the first element of a prima facie case that he had been perceived as disabled, which means being perceived as having a substantial limitation in one or more major life activity. A substantial limitation in a major life activity is having general restrictions on the performance of that activity in life as a whole, not merely restrictions on the ability to perform a specific job. Slip Op. at 9 (citing *Sutton v. Lader*, 185 F.3d 1203, 1209 (11th Cir. 1999); *Chandler v. City of Dallas*, 2 F.3d 1385, 1393 (5th Cir. 1993); *Dotson v. Electro-Wire Prods., Inc.*, 890 F. Supp. 982, 991 (D. Kan. 1995)). The district

---

[3](...continued)
McGeshick appealed the agency's decision to the Merit System Protection Board (MSPB), but the MSPB determined that it did not have jurisdiction to hear McGeshick's appeal. In July 2001, the MSPB's decision became final. Although the VA did not issue a notice that McGeshick was entitled to further proceedings, exhaustion is not an issue in this appeal. *See Wells v. Shalala*, 228 F.3d 1137, 1142 (10th Cir. 2000); *accord* Aplee. Br. at 29; Aplt. Br. at 41-42.

court viewed McGeshick's evidence as suggesting that the Secretary was only concerned about McGeshick's ability to walk or to stand for extended periods of time in situations where momentary dizziness would be clearly hazardous in the job of housekeeping aid, not that the Secretary generally regarded him as otherwise unable to perform major life activities such as walking or standing.

On appeal, McGeshick argues (1) that he presented sufficient evidence to raise a triable issue of fact whether he was regarded as an individual with a disability within the meaning of the Rehabilitation Act, and (2) that, in the alternative, he should be entitled to judgment as a matter of law for suffering discrimination on the basis of his perceived disability. We agree with the district court that McGeshick failed to present evidence that the Secretary perceived him as disabled within the meaning of the Rehabilitation Act. McGeshick has thus also failed to establish the requirements of a prima facie case, and he cannot be entitled to summary judgment as a matter of law. We affirm the district court's denial of McGeshick's motion and its grant of summary judgment in favor of the Secretary.

**Discussion**

We review grants of summary judgments de novo. *Goldsmith v. Learjet, Inc.*, 90 F.3d 1490, 1493 (10th Cir. 1996). Summary judgment is appropriate when "there is no genuine issue as to any material fact and . . . the moving party

is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). If a plaintiff has failed to produce sufficient evidence to support his claim, we affirm the grant of summary judgment against him. *See, e.g.*, *Steele v. Thiokol Corp.*, 241 F.3d 1248, 1256 (10th Cir. 2001).

The Rehabilitation Act prohibits discrimination against an "otherwise qualified individual with a disability." 29 U.S.C. § 794. The statute makes available a private right of action to qualified individuals who have been subjected to discrimination by the federal government or by a program or activity receiving federal financial assistance. 29 U.S.C. § 794a; *Niehaus v. Kan. Bar Ass'n*, 793 F.2d 1159, 1162 (10th Cir. 1986). Exhaustion of administrative remedies is not necessary to sustain a Rehabilitation Act claim.[4] *Wells v. Shalala*, 228 F.3d 1137, 1142 (10th Cir. 2000).

To proceed in federal court, a plaintiff must establish a prima facie case of employment discrimination under the Rehabilitation Act. The four elements of a prima facie claim are (1) that the plaintiff is disabled under the Act; (2) that he would be "otherwise qualified" to participate in the program; (3) that the program receives federal financial assistance (or is a federal agency); and (4) that the program has discriminated against the plaintiff. *See Schrader v. Fred A. Ray, M.D., P.C.*, 296 F.3d 968, 971 (10th Cir. 2002); *Powers v. MJB Acquisition*

---

[4] *See generally* text *supra* at n.2.

*Corp.*, 184 F.3d 1147, 1151 (10th Cir. 1999). McGeshick's arguments and the district court's decision focus on the first of these elements.

In 1992, Congress amended the Rehabilitation Act to provide that, in employment discrimination cases alleging violations of the Rehabilitation Act, "[t]he standards used to determine whether this section [of the Rehabilitation Act] has been violated . . . shall be the standards applied under title I of the Americans with Disabilities Act [the ADA]." 29 U.S.C. § 794(d). A major impact of this change has been an expansion of the understanding of "disabled" under the Rehabilitation Act. Thus, although the Rehabilitation Act itself defines the term "disabled" to mean "a physical or mental impairment that substantially limits one or more major life activities," Rehabilitation Act, 29 U.S.C. § 705(9)(B), the ADA expands the term "disability" to mean any of the following:

> (A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual;
> (B) a record of such an impairment; or
> (C) being regarded as having such an impairment.

42 U.S.C. § 12102(2); *see also* EEOC Interpretive Guidelines for the Rehabilitation Act, 29 C.F.R. § 1614.203(b).

To be substantially limited in a major life activity, "an individual must have an impairment that prevents or severely restricts the individual from doing activities that are of central importance to most people's daily lives." *Toyota*

*Motor Mfg., Ky., Inc. v. Williams*, 534 U.S. 184, 198 (2002). The impairment's

impact must "be permanent or long term." *Id.* To evaluate whether a claimant is

disabled from working, we consider "whether the claimant is unable to perform

the variety of tasks central to most people's daily lives, not whether the claimant

is unable to perform the tasks associated with [his] specific job." *Id.* at 200-01.

According to the Supreme Court, there is "no support in the Act, our previous

opinions, or the regulations for the . . . idea that the question of whether an

impairment constitutes a disability is to be answered only by analyzing the effect

of the impairment in the workplace." *Id.* at 201. Moreover, "the manual tasks

unique to any particular job are not necessarily important parts of most people's

lives." *Id.*

We agree with the district court that McGeshick failed to present evidence

to suggest that the Secretary perceived him as disabled under the Rehabilitation

Act. McGeshick's evidence certainly suggested that the Secretary perceived him

as a safety hazard in, for example, working in stairwells, on ladders, and out on

ledges to clean windows as required of a housekeeping aid. *See* Sanders Test.,

Aplt. App. at 110-12. And McGeshick presented evidence that the physicians at

the VA made a medical decision that his active symptoms of Meniere's disease

meant McGeshick should not be recommended for the position. Aplt. App. at 63,

70-72, 76-77. But McGeshick's evidence about the Secretary's perception of his

limitation is confined to concerns about specific tasks unique to the job of a housekeeping aid. *See Toyota*, 534 U.S. at 200. McGeshick makes no argument that working in stairwells, on ladders, or out on ledges to clean windows is of "central importance to most people's daily lives." *Id.* at 198; *cf. also Chandler v. City of Dallas*, 2 F.3d 1385, 1393 (5th Cir. 1993) ("An employer's belief that an employee is unable to perform one task with an adequate safety margin does not establish per se that the employer regards the employee as having a substantial limitation on his ability to work in general."). The fact that McGeshick has Meniere's disease is not enough for him to be perceived as disabled; he must prove that the Secretary perceived his symptoms to have actually been disabling as defined by the Rehabilitation Act and the ADA. *See, e.g.*, *Perkins v. St. Louis County Water Co.*, 160 F.3d 446, 448, 449 (8th Cir. 1998) (finding that employee with Meniere's disease was not disabled because he failed to prove that his symptoms rendered him disabled under the ADA).

Moreover, the Secretary invited McGeshick to apply for other jobs within the VA, which would indicate that the VA actually did not perceive McGeshick as substantially limited in his ability to perform major life activities. The evidence suggests that the Secretary indeed thought that McGeshick would be able to perform tasks outside of the specific job of housekeeping aid. *See, e.g.*, *Borgialli v. Thunder Basin Coal Co.*, 235 F.3d 1284, 1290 (10th Cir. 2000) (finding that an

employer's invitation to return casts doubt on whether the company considered the employee "disabled" under the ADA). McGeshick's additional evidence about his mobility and subsequent employment supports this assumption. The Secretary thus appears to have been acting very much in the spirit of the Act in trying to work with McGeshick to place him in another position for which he might have been better suited.

Finally, although we need not reach the issue of whether McGeshick was otherwise qualified for the original position for which he applied, it is a defense to claims under the Rehabilitation Act that an employee may pose a "direct threat" to the welfare of others. *See, e.g.*, *Sch. Bd. of Nassau County v. Arline*, 480 U.S. 273, 287-88, 287 n.16 (1987) (holding that a teacher would not be otherwise qualified for her job if her tuberculosis infection posed a direct threat to the health or safety of children attending the school). The Secretary's decision not to hire McGeshick was solidly grounded in the advice of medical professionals, who had reviewed McGeshick's medical record and had treated him for his active symptoms. Neither the Rehabilitation Act nor the ADA requires employers to put themselves or their employees at risk to accommodate an individual whose limitations might be dangerous on the job. *Borgialli*, 235 F.3d at 1295; *Robertson v. Neuromedical Ctr.*, 161 F.3d 292, 296 (5th Cir. 1998).

Because McGeshick failed to present evidence that the Secretary perceived him to be disabled within the meaning of the Rehabilitation Act, he has neither presented a triable issue of fact nor carried his burden to establish a prima facie case. McGeshick's motion for summary judgment was properly denied. The Secretary was entitled to a grant of summary judgment as a matter of law, and we AFFIRM the decision of the district court.