**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**April 7, 2009**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

JAMES L. DETTERLINE,

     Plaintiff-Appellant,

v.

KEN SALAZAR,[*] in his official
capacity as Secretary, United States
Department of the Interior,

     Defendant-Appellee.

No. 07-1443
(D.C. No. 04-CV-02432-RPM)
(D. Colo.)

---

**ORDER AND JUDGMENT**[**]

---

Before **TACHA** and **HARTZ**, Circuit Judges, and **DeGIUSTI**,[***] District Judge.

---

    James L. Detterline appeals from the district court's grant of summary judgment in

favor of the Secretary of the United States Department of Interior (the "Department"), on

Mr. Detterline's claims of employment discrimination pursuant to the Rehabilitation Act

---

   [*]Pursuant to Fed. R. App. P. 43(c)(2), Ken Salazar is substituted for Dirk Kempthorne as Secretary, United States Department of Interior, effective January 20, 2009.

   [**]This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

   [***]Honorable Timothy D. DeGiusti, District Judge, United States District Court for the Western District of Oklahoma, sitting by designation.

of 1973, 29 U.S.C. § 701, *et seq.* (the "Rehabilitation Act").  Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

## I. BACKGROUND

Mr. Detterline contends that the Department discriminated against him in connection with his employment as a Law Enforcement Park Ranger for the National Park Service ("NPS").  The district court granted the Department's summary judgment motion, concluding that the undisputed material facts establish that, as a matter of law, Mr. Detterline could not prevail on his claims.

Since early childhood, Mr. Detterline has been hearing impaired, and he has worn hearing aids since 1985.  Aplt.  App. at 94.  Mr. Detterline began working for the NPS in 1982, and he became a permanent Law Enforcement Park Ranger in 1992. *Id*. at 83.  It is not disputed that, to remain employed by the NPS as a Law Enforcement Park Ranger, he was required to meet certain health and fitness guidelines.  In 1999, the NPS revised those guidelines, adopting new medical standards and a physical fitness program for its Law Enforcement Park Rangers;[1] these are contained in NPS Reference Manual 57, "Occupational Medical Standards, Health and Fitness." Aplt. App. at 246.  In conjunction with Reference Manual 57, the NPS promulgated medical standards applicable to NPS Law Enforcement Park Rangers ("Medical Standards"). *Id*. at 135. All Law Enforcement Park Rangers are required to undergo periodic medical

---

[1]The record does not contain an explanation of the pre-1999 health and fitness guidelines.

examinations to determine whether they meet the Medical Standards. Aplt. App. at 259.

A Law Enforcement Park Ranger who does not meet the new standards is required to

obtain a waiver in order to continue his employment in an NPS law enforcement position.

Aplt. App. at 97.

Included in the Medical Standards is a new audiology standard which requires all

Law Enforcement Park Rangers to maintain a certain base level of hearing as measured

without the use of hearing aids.[2]  Aplt. App. at 138.  In April, 2001, Mr. Detterline

completed a physical examination, including a hearing test; consistent with the Medical

Standards, he was not allowed to use his hearing aids during the examination.  Aplt. Br. at

4;  Aplt. App. at 138.   On May 3, 2001,  Mr. Detterline was informed that he did not

satisfy the baseline hearing requirements.  He then requested a waiver, and, while

awaiting the agency's decision on his request, he was placed on temporary light duty

status effective May 31, 2001.[3]   Aplt. App. at 154-55; 157-58.  On October 25, 2001, Mr.

Detterline's waiver was granted with the condition that he wear his hearing aids while on

---

[2]According to the Medical Standards, Law Enforcement Park Rangers must meet the
following requirements: (1) hearing in the frequency range from 500-2,000 hertz (Hz), the
deficit of which should not exceed 30 decibels in either ear; and (2) hearing at 3,000 Hz,
the deficit of which should not exceed 40 decibels in either ear. Aplt. App. at 138.  The
Medical Standards expressly provide that "the use of any hearing aid to comply with the
medical standards is unacceptable." *Id.*  Although the Medical Standards state that a
condition which interferes with the ability to hear may disqualify a person from
employment in an NPS law enforcement position, the standards provide that "[c]ases will
be reviewed on a case-by-case basis."  Aplt. App. at 138.

[3]Light duty status required that Mr. Detterline not carry a weapon or work in any law
enforcement capacity.  Aplt. App. at 158.

duty. Aplt. App. at 189-90;192-93. It is not disputed that he returned to full duty as a Law Enforcement Park Ranger on November 26, 2001.

Mr. Detterline filed this lawsuit on November 23, 2004, alleging discrimination in violation of the Rehabilitation Act. Specifically, he alleged that (1) the Department discriminated against him because of his hearing disability; (2) the Department unlawfully retaliated against him for his assertion of protected rights under the Rehabilitation Act; (3) the Medical Standards had a disparate impact on him; and (4) the Department discriminated against him because it regarded him as disabled. Amended Complaint, Aplt. App. at 8. In response to the Department's summary judgment motion, Mr. Detterline conceded the first two claims; his counsel advised the district court during the hearing on the motion that those claims were no longer at issue. Aplt. App. at 397. The district court then considered the Department's motion on the two remaining claims and concluded that the undisputed material facts establish that Mr. Detterline cannot, as a matter of law, prevail on his claim that the Medical Standards had a discriminatory disparate impact on him, or his claim that the Department regarded him as disabled within the meaning of the Rehabilitation Act. *Id.* at 418-19.

On appeal, Mr. Detterline initially sought reversal of the district court's decision on both claims, and both were briefed by the parties. During oral argument, however, his counsel expressly abandoned his appeal regarding the disparate impact claim, stating that Mr. Detterline seeks reversal only of the district court's summary judgment ruling on the claim that he was regarded as disabled. Accordingly, our review is limited to that issue.

-4-

## II. STANDARD OF REVIEW

A district court's grant of summary judgment is reviewed *de novo*. *Stickley v. State Farm Mutual Automobile Ins. Co.,* 505 F. 3d 1070, 1076 (10th Cir. 2007). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). To dispute a material fact, a party opposing summary judgment must offer more than a mere "scintilla" of evidence; the evidence must be such that "a reasonable jury" could return a verdict for him. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). In reviewing the record, all factual inferences must be drawn in favor of the party opposing summary judgment. *Stover v. Martinez*, 382 F. 3d 1064, 1070 (10th Cir. 2004). We may affirm the district court's decision for any reason supported by the record. *Amro v. Boeing* Co., 232 F. 3d 790, 796 (10th Cir. 2000).

## III. DISCUSSION

The Rehabilitation Act prohibits the federal government and federally funded programs from discriminating against individuals on the basis of a disability; it creates a private right of action for disabled individuals, including federal employees who claim disability discrimination in connection with their employment. 29 U. S. C. § 794a; *McGeshick v. Principi*, 357 F. 3d 1146, 1149 (10th Cir. 2004). The Rehabilitation Act expressly incorporates and adopts the employment discrimination standards contained in

Title I of the Americans with Disabilities Act, 42 U. S. C. § 12111, *et seq.* ("ADA"). *See* 29 U. S. C. § 791(g). Thus, "decisions under both Acts apply interchangeably to our analysis." *Vidacak v. Potter*, 81 F. App'x 721, 723 (10th Cir. 2003) (unpublished) (citing *Woodman v. Runyon*, 132 F. 3d 1330, 1339 n. 8 (10th Cir. 1997)).

To establish a *prima facie* claim of discrimination under the Rehabilitation Act, a plaintiff must show that (1) he is disabled as defined by the Act; (2) he would be "otherwise qualified" to participate in the program; (3) the program receives federal financial assistance (or is a federal agency); and (4) the program has discriminated against him. *McGeshick*, 357 F. 3d at 1150 (citing *Schrader v. Fred A. Ray, M.D., P.C.*, 296 F. 3d 968, 971 (10th Cir. 2002) and *Powers v. MJB Acquisition Corp.*, 184 F. 3d 1147, 1151 (10th Cir.1999)).

The Rehabilitation Act adopts the ADA definition of disability. Thus, a plaintiff is disabled under the Act if he has 1) a physical or mental impairment that substantially limits one or more major life activities; 2) a record of having such an impairment; or 3) is regarded as having such an impairment. 42 U. S. C. § 12102(2). Accordingly, a claim of disability discrimination may be based on the contention that the plaintiff was "regarded as disabled." *McGeshick*, 357 F. 3d at 1150-51. To establish that he is regarded as disabled in connection with his employment, a plaintiff must show that (1) the employer mistakenly believes the plaintiff has a physical or mental impairment that substantially limits a major life activity; or (2) the employer mistakenly believes that an existing impairment substantially limits a major life activity when, in fact, the impairment does

not result in a  limitation.  *Justice v. Crown Cork and Seal Co.*, 527 F. 3d 1080, 1086 (10th Cir. 2008[5]) (citing  *Sutton v. United Airlines*, 527 U.S. 471, 489 (1999);  29 C. F. R. § 1630.2(l).

In support of his "regarded as" claim in this case, Mr. Detterline does not argue that the Department mistakenly believed he had an impairment.  On the contrary, Mr. Detterline has consistently acknowledged that he has a hearing impairment.  He argues only that the Department mistakenly believed that his hearing impairment substantially limits his ability to perform the major life activity of working.[6]  To satisfy his burden with respect to this claim, Mr. Detterline cannot rely only on the fact that his hearing is impaired; the existence of an impairment alone is "not enough for him to be perceived as disabled; he must prove that the [employer] perceived his symptoms to have actually been disabling as defined by the Rehabilitation Act and the ADA."  *McGeshick,* 357 F. 3d at 1151.

Because Mr. Detterline relies only on the specific major life activity of working, we address only that issue, as the analysis of a "regarded as" claim is limited to the major

---

[5]Although factually distinguishable from this case, *Justice* is this circuit's most recent published decision explaining a plaintiff's burden of proof concerning a "regarded as" claim.

[6]Although Mr. Detterline's appellate briefs could be construed as also contending that the Department believed he was substantially limited in the major life activity of hearing, his counsel expressly stated during oral argument that working is the only major life activity at issue.  It is not disputed that working is a major life activity under the Rehabilitation Act, which adopts the ADA definition of major life activities as including "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working."  29 C.F.R. § 1630.2(i).

life activities on which the plaintiff relies. *Justice*, 527 F. 3d at 1086 (citations omitted). Thus, we examine the record to determine whether Mr. Detterline has offered evidence from which a reasonable jury could find that the Department regarded him as substantially limited in the major life activity of working.

To satisfy his *prima facie* burden on this claim, Mr. Detterline must offer evidence that the Department regarded him as significantly restricted in his ability to "perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills, and abilities." 29 C.F.R. § 1630.2(j)(3)(i). A "class" of jobs is a set of jobs "utilizing similar training, knowledge, skills or abilities," while a "broad range of jobs" refers to a number of dissimilar jobs which a plaintiff is unable to perform. *EEOC v. Heartway Corp.*, 466 F. 3d 1156, 1164 (10th Cir. 2006) (quotation omitted). An employer's continued willingness to employ an individual in his current position is evidence that the employer does not regard the individual as substantially limited in his ability to work. *Rakity v. Dillon Companies,* 302 F. 3d 1152, 1164 (10th Cir. 2002).

Mr. Detterline argues that the Department regarded him as substantially limited in his ability to perform the duties involved in a class of jobs he identifies as law enforcement. The undisputed evidence in the record establishes that he cannot prevail on this claim.

Mr. Detterline repeatedly notes that, throughout his employment with the NPS, he successfully performed his job duties with the use of hearing aids. He admits that "[a]t no

time during my service as a commissioned park ranger was my hearing disability ever raised as a concern in terms of my ability to perform my job…." Aplt. App. at 166. In his deposition, he acknowledged the support of the supervisors in his chain of command at Rocky Mountain National Park. *Id*. at 103-04. In support of his waiver request, Mr. Detterline submitted letters from his supervisors to show that he could perform his job duties with the use of hearing aids. Aplt. App. at 168, 172, 174-175. According to Mr. Detterline, "I have successfully performed my park ranger law enforcement and search and rescue duties while wearing these hearing aids, often under very demanding conditions, for over 15 years." *Id*. at 170. Furthermore, as an alternative to a complete waiver of the baseline hearing requirements, he specifically asked the NPS to accommodate him by allowing him to continue wearing his hearing aids while performing his duties as a Law Enforcement Park Ranger at Rocky Mountain National Park. Aplt. App. at 164.

The NPS Medical Review Board agreed that, with the use of hearing aids, Mr. Detterline could perform his duties; thus, it authorized his requested accommodation. In doing so, it observed Mr. Detterline "successfully wore [his] hearing aids for over 16 years" and had "a long demonstrated work history in some of the most extreme environmental conditions in the NPS." Aplt. App. at 192-93. The Department suggested, but did not require, that he replace his analog hearing aids with digital hearing aids to

further improve his hearing.[7] *Id.* Thus, the Department determined that he could continue in his position as a Law Enforcement Park Ranger at Rocky Mountain National Park.

Mr. Detterline does not argue that he can successfully perform his job without the use of hearing aids, and he does not challenge the accuracy of his 2001 baseline hearing examination. Nor does he challenge the validity of the baseline hearing requirements which the NPS has determined are necessary for the job performance of its law enforcement personnel.

"Where the recognition of Plaintiff's limitations is not an erroneous perception, but is instead a recognition of fact, a finding that Plaintiff was regarded as disabled is inappropriate." *Lusk v. Ryder Integrated Logistics*, 238 F. 3d 1237, 1241-42 (10th Cir. 2001). The fact that an employer recognizes an employee's physical restrictions and places him in a position allowing him to work within those restrictions does not, by itself, show that the employer regarded him as disabled. *Yeske v. King Soopers, Inc.*, 13 F. App'x 802, 804 (10th Cir. 2001) (unpublished) (employer did not regard an employee as disabled when it placed him on medical leave pending the identification of a position which he could perform within his medical restrictions).

In this case, the Department continued to employ Mr. Detterline as a Law Enforcement Park Ranger at Rocky Mountain National Park, with the use of the hearing

---

[7]The record reflects that Mr. Detterline decided to obtain digital hearing aids to replace the analog hearing aids he had used since 1985. Aplt. App. at 112. He regarded the digital hearing aids as an upgrade which improves his hearing ability. *Id.* at 95.

aids he had worn for more than 16 years. That evidence negates the contention that the Department regarded him as substantially limited in working as a law Enforcement Park Ranger at Rocky Mountain National Park.

Mr. Detterline argues, however, that the Department regarded him as significantly restricted in his ability to work in the class of jobs he characterizes as law enforcement because the waiver he received must be reviewed annually and because the waiver is limited to his current position as a Law Enforcement Park Ranger at Rocky Mountain National Park. Aplt. App. at 339. These arguments are not persuasive.

An annual review of Mr. Detterline's waiver is consistent with the NPS requirement that all Law Enforcement Park Rangers undergo annual medical examinations to ensure that they continue to meet the basic physical requirements of their positions. As the district court concluded, the NPS requirements are reasonable and appropriate because Law Enforcement Park Rangers are subject to physical demands that might not be applicable to other NPS employment positions. Aplt. App. at 417. As the district court also observed, the ability to function within normal hearing parameters is an appropriate requirement for Law Enforcement Park Rangers because their job duties require interaction with the public, the operation of emergency equipment, and the use of firearms. *Id.* Requiring an annual review for any waiver of the Medical Standards is consistent with the NPS goal of ensuring that its law enforcement personnel continue to satisfy the physical requirements, including the baseline hearing requirements, necessary to perform their duties. The annual review was not unique to Mr. Detterline's waiver, and

-11-

he offers no evidence to show that, with respect to this requirement, he was treated differently from other Law Enforcement Park Rangers.

Similarly, the fact that Mr. Detterline's waiver is limited to the position he holds at Rocky Mountain National Park is not evidence that the Department regarded him as significantly restricted in his ability to perform law enforcement jobs. Contrary to Mr. Detterline's argument, "an employer's belief that a plaintiff is capable of performing a particular job only under certain conditions does not show that the employer believed the plaintiff to be incapable of performing an entire class of jobs." *Justice*, 527 F. 3d at 1087 (citing *Murphy v. United Parcel Service, Inc.*, 527 U.S. 516, 524 (1999)). Furthermore, an employer's belief that "'an employee is unable to perform one task with an adequate safety margin does not establish per se that the employer regards the employee as having a substantial limitation on his ability to work in general.'" *McGeshick*, 357 F. 3d at 1151 (quoting *Chandler v. City of Dallas*, 2 F. 3d 1385, 1393 (5th Cir. 1993)).

In this case, the Department was not asked to consider Mr. Detterline's ability to perform the duties of a law enforcement position other than the position he held at the time, and it expressed no opinion regarding his ability to perform in other positions. Mr. Detterline admittedly has not applied for other law enforcement positions, nor does he intend to do so. In fact, he has continued to work in his same position as a Law Enforcement Park Ranger at Rocky Mountain National Park. Mr. Detterline offers no evidence to dispute the fact that law enforcement positions at other national parks could involve physical requirements different from those applicable to the specific position he

-12-

holds. As the district court noted, the NPS must consider the physical capabilities of its rangers in the context of the demands of a particular position in a given location. The climate and terrain may vary significantly from one park to another; as a result, a ranger's physical demands may be affected by the location of the park to which he is assigned. Aplt. App. at 418-419. Thus, a waiver or accommodation for a law enforcement position at Rocky Mountain National Park may not be appropriate for a similar position at another NPS facility. *Id.* That the Department considered Mr. Detterline's request only as it applied to his current position is not evidence that it regarded him as substantially limited in his ability to perform other law enforcement jobs. There is no evidence supporting his contention that the Department regarded him as disabled on this basis. The district court correctly determined that the Department is entitled to judgment as a matter of law on this claim.

## IV. CONCLUSION

Having fully considered the record and the arguments of counsel, we find no error in the district court's decision to grant summary judgment in favor of the Department. Accordingly, the decision is AFFIRMED.

Entered for the Court


Timothy D. DeGiusti
District Judge

-13-